

**FILED**

MAY 2 1 2008
**MAY 2 1 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

JOVAN JONES, Individually and on Behalf of )
All Others Similarly Situated, )
                                   )
                    Plaintiff, )
                                   )
     vs. )
                                   )
SEARS, ROEBUCK & CO., )
                                   )
                 Defendant. )
                                   )
                                   )

## 08CV2951
## JUDGE LEINENWEBER
## MAG. JUDGE COX

**JURY TRIAL DEMANDED**

### <u>CLASS ACTION COMPLAINT</u>

Plaintiff Jovan Jones ("Plaintiff"), individually and on behalf of all others similarly situated,

hereby sues Sears, Roebuck & Co. ("Sears" and "Defendant"), and states as follows:

## INTRODUCTION



1.      On its website, Sears asks potential customers, "Have you ever tried to install a

product and later worried that a connection wasn't safe, or that you may have missed an important

step?"[1]  Holding itself and its installers out as experts, Sears then answers its own rhetorical

question, representing in writing to its prospective customers nationwide that, "There's no need to

worry anymore. Our professional installers are skilled, trained, experienced, and equipped with the

right tools to do the job properly."[2]

2.      Based on, among other things, Sears' "expert" assurances, thousands of people

nationwide contracted with Sears to install clothes Dryers (the "Dryers") in their homes.

---

[1]

http://www.sears.com/shc/s/nb_10153_12605_NB_InstallationRepairs?adCell=AF&keywordRedirect=install
ation

[2]

http://www.sears.com/shc/s/nb_10153_12605_NB_InstallationRepairs?adCell=AF&keywordRedirect=install
ation

3.      The Dryers themselves and/or the installation manuals for the Dryers contain a **WARNING** sign regarding the installation of vents, a sample of which appears above.

4.      The manufactures require the installation of a heavy metal vent. There are two types of heavy metal vents: (1) rigid metal; and (2) flexible (also known as semi-rigid) metal. The manufactures do not permit metal foil.

5.      Despite the fact that the **WARNING** on the Dryer is straightforward, concise, and clearly states the specific materials that must be used during the installation of a Dryer, Sears and its installers – the self-styled experts – often blatantly ignore the **WARNING**. Specifically, rather than following the straightforward directions, Defendant – the self-proclaimed "experts" – installed the Dryers without using the vents mandated by the manufacturers.

6.      Sears' "skilled, trained, experienced, equipped" installers failed to follow the **WARNING** contained in the installation instructions, user instruction, and on the back of the Dryer, thus creating dangerous conditions that can result in death or fire.

## FACTUAL BACKGROUND

7.      Plaintiff brings this action individually and on behalf of a class defined as follows: All persons who purchased a Dryer from Sears, who entered into a contract with Sears to install the Dryer, and whose Dryer was installed pursuant to that agreement with a vent that was not in accordance with the manufacturer's requirements (the "Class").

8.      All of the claims asserted herein arise out of Sears' failure to properly install the Dryers in contravention of the clear and explicit installation **WARNING** contained in the installation instructions, user instructions, and/or on the back of the Dryers.

9.      Sears charges approximately $49 to install each Dryer. Sears failed to properly install the Dryers because it did not use the vents mandated by the manufacturers.

10.    Indeed, despite the fact that Sears has sold and installed Dryers for decades, unbeknownst to Plaintiff and the Class, the installations of the Dryers did not meet the requirements set by the manufacturers and created risks of fire hazard and death. To date, based on information and belief Sears continues to improperly install Dryers to unknowing class members, breaching the manufacturers' warranties and creating hazardous conditions that can lead to death or fire.

11.    Upon information and belief, Sears' uniform installation contract, a sample copy of which is attached hereto and incorporated herein by reference as **Exhibit A**, represented to Plaintiff and the Class the installation of the Dryers would be done properly and in a workmanlike manner. Sears breached the installation contracts of Plaintiff and all members of the Class by failing to properly install the Dryers in direct violation of the **WARNING** in the manual for the Dryers and/or affixed to the Dryers themselves.

12.    Sears' website, in fact, touts the superiority of its installation and states:

**Sears Installation & Assembly Service**

**Let the pros from Sears do it**

What's the difference between Installation and Assembly? There's no difference to Sears—we have experience in both. We can install and assemble any item—from dishwashers to high definition televisions—allowing you to enjoy your new item without any hassle. With Sears doing the work, you'll know your product will perform properly, efficiently and safely.

**Installation**
Have you ever tried to install a product and later worried that a connection wasn't safe, or that you may have missed an important step? There's no need to worry anymore. Our professional installers are skilled, trained, experienced, and equipped with the right tools to do the job properly. We'll will hook up your product, program its controls, and test its operation. We even offer a 1-year warranty on all installations to give you complete peace of mind.

*See* http://www.sears.com/shc/s/nb_10153_12605_NB_InstallationRepairs?adCell=AF&keyword Redirect=installation.

13.    As part of Sears' agreement to install Dryers for Class Members in return for payment, Sears clearly obligates itself to safely install the Dryers in accordance with manufacturers' instructions:

**Laundry Appliances**

**Washers, Dryers**

Your Sears Installer will*:

- Unpack product and prepare it for installation
- Inspect your product for any damage or defects
- Inspect your installation site and provide a quote if any additional work is required
- Disconnect your old product and place it in an accessible location
- Connect your new product to existing, code approved utilities per manufacturer instructions
- Level and secure your product, and install any manufacturer-supplied safety hardware
- Test your product to ensure it performs properly
- Give you clear, easy-to-understand instructions on how to operate the product
- Clean up and dispose of any job related debris

14.     Thus, Sears unequivocally represents to its consumers that it will comply with *"manufacturer instructions"* when installing the Dryers.

15.     Contrary to its contractual obligations, as well as manufacturer standards, the Dryers purchased by Plaintiff and the Class have been and continue to be installed improperly in violation of the manufacturers' mandate.  Metal foil or plastic vents are specifically prohibited by the manufacturers' instructions and/or on the **WARNING** affixed to the back of the Dryers. Defendant's failure to install the Dryers safely and according to the manufacturers' instructions breached the installation contracts between Sears and its customers, caused a breach of the manufacturers' warranties on the Dryers, created significant danger of fire or death to the customers and their families, and caused substantial monetary damages.

16.     Sears' unlawful and continuous hazardous course of conduct creates a significant risk of immediate and irreparable harm to its customers, thereby justifying the issuance of an ongoing preliminary injunction, and ultimately a permanent injunction enjoining Sears and its agents from installing the Dryers contrary to manufacturers' requirements.

17.     As a direct consequence of Sears' failure to properly and safely install the Dryers, Plaintiff and the Class either have or will incur significant damages to ensure that their Dryers are installed in a manner that is safe and meets the requirements set by the manufacturer.

## THE PARTIES

18.     Plaintiff Jones was and is, at all times relevant, a resident and citizen of the State of Indiana.  Plaintiff purchased a Dryer from Sears on or about January 12, 2007, for $479.99.  In addition, Plaintiff contracted with Sears for "professional" Dryer installation with Sears for an additional $49.00.

19.     Defendant Sears Roebuck & Co. is a New York corporation with its principal place of business at Hoffman Estates, Cook County, Illinois.  Sears is engaged in the business of retail sales and installation of appliances and other merchandise.

## JURISDICTION AND VENUE

20.     The Court has subject matter jurisdiction over this action pursuant to 28 USC §1332(d)(2) because this matter is a class action with an amount in controversy that exceeds $5,000,000, there are thousands of Class members, and members of the Class of plaintiffs are citizens of states different from Sears.

21.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b) and (c) because a substantial part of the events or omissions giving rise to the claims occurred in this District and because Sears is subject to personal jurisdiction in this District.

22.     The members of the putative Class have suffered aggregate damages exceeding $5,000,000, exclusive of interest and costs.

## SUBSTATIVE FACTUAL ALLEGATIONS

### *Plaintiff's Personal Experience*

23.     Plaintiff purchased a Dryer from a Sears retail store located in Lebanon, Indiana, on January 12, 2007.  In addition to the Dryer, Plaintiff contracted with Sears for a "professional" installation of the Dryer and paid an additional $49.00 for this installation.

- - 5 - -

24.　　On or about April 30, 2008, Plaintiff first inspected the Dryer vent utilized by Sears when it installed the Dryer and discovered that it was a metal foil vent. A picture of Plaintiff's Dryer vent clearly shows it is a metal foil vent:



25.　　After discovering the metal foil vent, Plaintiff discovered the **WARNING**, which was not normally visible due to its location. The **WARNING** specifically prohibited metal foil vent - the very kind Sears used to install Plaintiff's Dryer. The **WARNING** states:



26.    Having learned of Sears' creation of a hazardous condition, Plaintiff reviewed the

Dryers' User Manual and confirmed that it also contained the **WARNING**. *See* User Manual at pg.

4, attached as **Exhibit B**. Furthermore, the Dryer's Installation Instruction also contained detailed

instructions on how to install the vents and included the same **WARNING** against the use of plastic

or metal foil vents. *See* Installation Instructions at pg. 10, attached as **Exhibit C**. These documents

explicitly mandate the use only of a "heavy metal vent," such as shown in the following pictures:

Heavy metal – rigid:



Heavy metal – flexible/semi-rigid:



27.    Furthermore, Plaintiff's manufacturer's warranty will not pay for damage resulting

from "improper installation." *See* User Manual at pg. 10, attached as **Exhibit D.**

- - 7 - -

### *Sears' Misconduct*

28.     Sears is a wholly owned subsidiary of Sears Holdings Corporation ("Sears Holding").
Sears Holdings is publicly-traded on the NASDAQ system under the ticker symbol "SHLD," and is
also the parent company of Kmart.   Sears Holdings is the nation's fourth largest broadline retailer
with over $50 billion in annual revenues and approximately 3,800 full-line and specialty retail stores
in the United States and Canada.

29.     Sears is the leading home appliance retailer in North America and is a retail sales
leader in tools, lawn and garden, home electronics, and automotive repair and maintenance.

30.     Nevertheless, Sears failed to install Plaintiff's Dryer and the Dryers of other members
of the Class according to the manufacturers' specifications and contrary to the express **WARNING**
contained in the installation instruction, user instructions, and/or on the back of the Dryer.

31.     Despite its knowledge of its uniform breach of its installation obligations and its
uniform creation of hazardous conditions, Sears refused to address the substandard installations and
has left consumers with Dryers that could potentially catch fire and cause harm or death to its
customers and their families.

32.     Each manufacturer of Dryers maintains uniform standards requiring a heavy metal
vent to be used during installation.  Below is a sampling of Dryers, along with the manufacturer
specifications by which they should be installed, with regard to the type of vent required:

| Manufacturer | Model Number | Venting requirements warning language |
|---|---|---|
| Amana | NED5500TQ | Use a heavy metal vent |
| GE | DPGT750 | Use only rigid metal 4" diameter ductwork inside the dryer cabinet. Use of plastic or other combustible ductwork can cause a fire. |
| | DBVH520 DCVH515 DCVH640 DHDVH552 DHDVH66 | Use only rigid metal or flexible metal 4" diameter inside the dryer cabinet or for exhausting to the outside. Do not use plastic or other combustible ductwork. |

| Manufacturer | Model Number | Venting requirements warning language |
|---|---|---|
| | DPSR610<br>DPSE810 | Use only rigid metal 4" diameter ductwork inside the dryer cabinet. Use only rigid metal or flexible metal 4" diameter ductwork for exhaust to the outside. Do not use plastic or other combustible ductwork. |
| Frigidaire | AEQ6700FE<br>AGQ6700ES<br>FEQ1442E<br>FGQ332E | Use only 4 inch diameter rigid or flexible metal duct and approved vent hood which has a swing-out damper(s) that open when the dryer is in operation. Do not install a clothes dryer with flexible plastic venting materials. |
| Whirlpool | LDR3822P<br>LEW0050P<br>WED6400S<br>WED8300S<br>WED9600T<br>WGD5700S<br>WGD9400S | Use a heavy metal vent.<br>Do not use a plastic vent.<br>Do not use a metal foil vent.<br>Failure to follow these instructions can result in death or fire. |
| Maytag | MED9700SQ<br>MGD5700TQ<br>MED2600TW<br>MGD6600TQ | Use a heavy metal vent.<br>Do not use a plastic vent.<br>Do not use a metal foil vent.<br>Failure to follow these instructions can result in death or fire. |

33.    In addition to the above, many governmental, consumer, and trade groups have cautioned against the use of plastic or foil vents:

(a)    In 2003, the Consumer Product Safety Commission warned that to prevent a fire, owners should "Replace plastic or foil, accordion-type ducting material with rigid or corrugated semi-rigid metal duct. Most manufacturers specify the use of a rigid or corrugated semi-rigid metal duct, which provides maximum airflow. The flexible plastic or foil type duct can more easily trap lint and is more susceptible to kinks or crushing, which can greatly reduce the airflow."

(b)    The Federal Emergency Management Agency ("FEMA") noted similar concerns in 2007: "All manufacturers now state in their manuals not to use plastic flexible dryer ducts between the vent and the clothes dryer. However, many homes, as well as some new construction homes, continue to use plastic flexible ducts. The plastic itself can provide additional fuel for a fire. Even flexible foil vents are not the best choice for venting clothes dryers. Flexible vents can sag, allowing lint to build up and catch on fire if it comes in contact with a sufficient

amount of heat. If a fire starts beneath the dryer when the motor overheats, then the drafts from the dryer can pull that fire up into the duct and venting allowing a house fire to develop."[3]

        (c)     Consumer Reports has found that "When it comes to dryer fires, flexible dryer ducts made of foil or plastic are the most problematic because they can sag and let lint build up at low points. Ridges can also trap lint. Metal ducts, either flexible or rigid, are far safer because they don't sag, so lint is less likely to accumulate. What's more, if a fire does start, a metal duct is more likely to contain it."[4]

        (d)     The Association of Home Appliance Manufacturers ("AHAM"), the trade association of the home appliance manufacturing industry, submitted comments to the 1999 edition of the National Fuel Gas Code (ANSI Z223.1/NFPA 54) to specify that exhaust and transition vents shall not be constructed of coiled-wire foil or plastic material and that vents be installed in accordance with the clothes Dryer manufacturers' installation instructions. AHAM recommends that clothes Dryer vents be constructed of rigid sheet metal or corrugated semi-rigid sheet metal material.[5]

### The Dangers of Improper Installation Are Real

34.     According to the U.S. Fire Administration (Division of U.S. Department of Homeland Security), clothes Dryers were involved in an estimated 15,600 U.S. structure fires, fifteen deaths, 400 injuries and $99 million in direct property damage, annually, between 2002–2004.

---

[3]    FEMA (www.usfa.dhs.gov/statistics/reports) Tropical Fire Research Series, vol. 1, issue 1 (Jan. 2007).

[4]    See http://www.nuflodryerventcleaning.com/1952920.html.

[5]    See http://www.aham.org/consumer/ht/a/GetDocumentAction/id/859.

35.    The leading cause of clothes Dryer fires is due to improper installation of vents and excessive build up of lint within the Dryer. The correct installation and use of the heavy metal Dryer vent greatly reduces the risk of lint build-up and exhaust pipe restriction. Below is just a sampling of recent home fires linked to clothes Dryers:

**Family Escapes After Dryer Fire in CK Home - by Josh Farley - Kitsap Sun (4/11/2008)**
KITSAP, WA - A fire late Thursday at a Conifer Drive home displaced a family of five, according to Central Kitsap Fire and Rescue. The homeowner awoke to find the two-story home thick with smoke ---- but was unable to get downstairs to wake two of her children, reports said. She lowered one of her children from the second story to safety, then jumped from the house herself. She was then able to pound on the windows downstairs and they both escaped safely, crews said. She then called 911 from a neighbor's home. Firefighters doused the flames and kept damage to the home's laundry area, but heavy smoke damage was reported elsewhere through the house. The family dog, which was in the basement of the house, was rescued by crews. The Kitsap County Fire Marshal's Office said the fire started in the dryer.

**Cause Found in Early Morning House Fire - WSFA NBC Channel 12 News (4/9/2008)**
MONTGOMERY, AL – The Montgomery Fire Department tells WSFA 12 News they are treating an early morning fire on as an accident. Officials say the fire was most likely stared by a clothes dryer. The fire was well involved when fire fighters arrived on scene, and it took 20 minutes to get the blaze under control. There were no significant injuries, but one firefighter was treated for first and second degree burns. Unfortunately, the house is not livable at this time because it was so heavily damaged.

**Family Loses Home to Fire - By Chris Brennaman - WTOK NewsCenter 11 ABC (4/9/2008)**
DEKALB, MS - A trip to the grocery store Monday evening turned out to be anything but ordinary for the Carpenter family of DeKalb. Kendra and Lyndon arrived home just as two of their three children were running out of the family's burning house. Nothing in the home was spared from the fire, which was believed to have started from the dryer. "We're all heartbroken, but the most important thing is our kids made it out safe and we're all here, alive and well," Carpenter said. "That's really all that matters."

**Dryer Blamed for $375,000 House Fire - Tri-Valley Herald (4/7/2008)**
PLEASANTON, CA - A fire that apparently started in a clothes dryer caused $375, 000 damage to a two-car garage and attached single family house this morning, fire officials said. Fire Battalion Chief Joe Testa said the fire, which was reported at 5:53 a.m., destroyed the garage. There was also some fire damage to the house, which is attached to the garage. The dryer was in operation when the fire started, he said. One firefighter sustained a minor injury fighting the fire. "The homeowner did the right thing, he got his family out safely, then called 9-1-1-," Testa said.

**Apartment Fire Blamed on Clogged Dryer Vent - By Anita Debro - The Birmingham News (4/3/2008)**
BIRMINGHAM, AL – A clogged dryer vent sparked the fire Tuesday night that destroyed 23 apartments at the Enclave at Mountain Brook, Irondale fire officials said today. Fire Chief Randy Davis said lint built up inside the dryer vent caught fire as the dryer was running inside a unit of the apartment complex. The fire ripped through the building as Irondale, Birmingham and Mountain Brook firefighters fought to contain the blaze. There were 23 families displaced.

**Woman at Willingboro House Fire Later Dies - By Mari A. Schaefer - The Philadelphia Inquirer (3/30/2008)**
WILLINGBORO, PA - A 69-year-old woman died after she was pulled from a burning house in Willingboro yesterday morning. At 8:52 a.m., 911 dispatchers received a call about a clothes dryer fire in the 100 block of Millbrook Drive. The blaze had spread by the time firefighters arrived. The unidentified woman was taken to Our Lady of Lourdes Medical Center in Camden, where she was pronounced dead.

**Clothes Dryer Blamed for Fire that Left 10 Homeless - By Katrina Webber - KSLA CBS News Channel 12 (3/25/2008)**
SHREVEPORT, LA - Shreveport fire investigators believe a clothes dryer cause a fire that destroyed a home early Tuesday morning. Ten people were inside when the fire broke out around 1:00 a. m. All of them managed to get out of the home, in the 3300 block of Frederick Street, safely, although firefighters say they had to treat one woman who became upset. Firefighters say flames and smoke were coming out of the front door by the time they arrived. The house, though, could not be saved. The fire caused heavy damage throughout it.

**Clothes Dryer Caused Deadly Chesapeake House Fire - The Daily Press (2/29/2008)**
CHESAPEAKE, VA - Chesapeake fire officials say a clothes dryer caused a fire that killed three people in a house fire Thursday. Authorities have not released the names of the victims, who were found in a room above the garage at the home. Captain Steve Johnson said all three are believed to have been between the ages of 18 and 25. He said one of the victims apparently went upstairs to help the other two but ended up trapped with them.

**Fire Kills Mother, Son Who Tried to Save Her - By Edward Colimore and Peter Mucha - The Philadelphia Inquirer (2/28/2008)**
CHERRY HILL, NJ - Fourteen-year-old Bobby Ferrell had already escaped his burning home in Jobstown, Burlington County, authorities said. But standing outside with his brother and sister early yesterday, he realized that their mother was inside, apparently trapped on the second floor. The athletic ninth grader raced back into the smoke and flames to save her. Neither he nor his mother, Michelle Ferrell, escaped the four-alarm fire, which gutted their house in rural Springfield Township near Fort Dix. Ferrell, 53, and her children were home shortly after 4:30 a.m. when the fire broke out in a clothes dryer.

**Lint-filled Dryer Blamed for Fire - Erie Times News (2/27/2008)**
ERIE, PA - Erie firefighters spent part of the morning Tuesday dousing a blaze believed to have started in a clothes dryer. Firefighters said they responded to the call at 1:56 a.m. Tuesday and had the fire under control by 2:30 a.m. The fire started in a gas dryer in the basement, fire inspectors said. They said the dryer's lint trap was full and the lint caught fire. The fire was contained to the basement, but there was some smoke damage to the house's upstairs, fire inspectors said.

**Family Displaced Following Fire - Boca News (2/26/2008)**
BOCA RATON, FL - Boca Raton firefighters responded to a structure fire at 6503 N. Military Trail. Firefighters arrived to find smoke coming from the structure. Firefighters made entry and found the fire in the laundry closet in the kitchen area and quickly extinguished the fire. Fire officials stated that the fire appears to have originated in the clothes dryer. Damage is estimated at approximately $50,000. Eight families were evacuated and the occupants of the affected apartment were displaced.

**Aide Dies After Helping Elderly Evacuate Fire - By Kate Augusto - The Boston Globe (2/21/2008)**
BOSTON, MA - A 51-year-old nursing assistant died today in Lowell after she helped evacuate elderly residents from a nursing home during a small fire in a dryer. Rawlene Lizotte collapsed outside the Fairhaven Healthcare Center after helping to evacuate six residents, said Deputy Chief Patrick McCabe of the Lowell Fire Department. Rescuers tried to resuscitate Lizotte and rushed her to Lowell General Hospital, where she was pronounced dead. Firefighters responded to the fire, which started in a dryer in the laundry room.

**Dryer Fire Causes Scare - WZZM ABC News Channel 13 (2/12/2008)**
CROCKERY TOWNSHIP, MI - A woman in Crockery Township got quite a scare this morning when her clothes dryer on fire and spread to the rest of the house. The fire department was called to the home around 9:00am. The woman reported a few moments later that she heard an explosion. The fire department says these types of fires can be prevented by cleaning out the lint trap and dryer vent.

**House Fire Traced to Bad Dryer Venting - By Barney Lerten - KTVZ NBC News Channel 21 (2/12/2008)**

BEND, OR -- Inadequate dryer venting sparked a laundry-room fire that caused extensive heat and smoke damage throughout a La Pine-area home, officials said. The blaze spread throughout the laundry room area and began to reach into the attic space above the laundry room of the two-bedroom home, built in 1975 and valued at $285,000.

**Mother and Son Die in Fire at Home - By Paul Nelson - Albany Times Union (1/21/2008)**
STUYVESANT , NY - A woman and her baseball-loving 11-year-old son died Sunday as they tried to extinguish a fire that started in a clothes dryer, authorities said. The fire did little damage to Malea Gravlin's home, but authorities believe the smoke was enough to kill the two. Stuyvesant Fire Chief Steve Montie said the fire started sometime between 3:30 and 4 p.m. in Malea Gravlin's one-story, wood-frame home. Officials say it appears dryer in the house caught fire and the two were overcome by smoke as they tried to put out the flames.

**Tot Saves Family from Fire - By Miles Godfrey - The Argus (1/18/2008)**
BRIGHTON, UK - A six year-old boy saved his family from serious injury after a blaze at their home. The lad woke up in the middle of the night just as a dryer burst into flames. When his parents were woken by the child they smelt the smoke and quickly evacuated the two storey property. Just as they got out just after midnight today as the dryer was engulfed in flames. Two crews from the town's Blue Watch were needed to put it out.

36.     Despite Sears' knowledge of the significant fire hazard associated with the improper installation of Dryers, Sears has not taken steps to ensure that its customers receive safe installations in accordance with all manufacturer instructions. Instead, Sears has chosen to install Dryers using improper materials, therefore saving Sears a substantial amount of time and money but, by doing so, breaching the contract they have entered into with Class members, violating the customers' manufacturer warranties, and putting them at risk of death or injury.

## CLASS ACTION ALLEGATIONS

37.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b) on behalf of herself and all others similarly situated as members of the following class:

> All persons who purchased a Dryer from Sears, who entered into a contract with Sears to install the Dryer, and whose Dryer was installed pursuant to that agreement with a vent that was not in accordance with the manufacturer's requirements.

38.     Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint. Specifically excluded from the proposed Class is Defendant, its officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees,

principals, servants, partners, joint venturers, or entities controlled by Defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or their officers and/or directors, or any of them; the Judge assigned to this action, and any member of the Judge's immediate family.

39. **Numerosity**. The members of the Class are so numerous that their individual joinder is impracticable. Plaintiff is informed and believes, and on that basis alleges, that the proposed Class contains many thousands of members. The precise number of Class members is unknown to Plaintiff. The true number of Class members are known by Defendant, however, and thus, may be notified of the pendency of this action by first class mail, electronic mail, and by published notice.

40. **Existence and Predominance of Common Questions of Law and Fact**. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

(a) Whether the installation of the Dryers by Defendant violates the manufacturers' requirement and/or the **WARNING**;

(b) Whether Defendant breached contracts with Plaintiff and other members of the Class with respect to the installation of the Dryers;

(c) Whether Defendant have been unjustly enriched at the expense of Plaintiff and the Class;

(d) Whether Defendant are liable to Plaintiff and the Class for money had and received;

(e) Whether Defendant should be enjoined from engaging in the methods, acts or practices alleged herein; and

- - 14 - -

(f)    Whether Plaintiff and the Class are entitled to damages, restitution, equitable relief and other relief, including, but not limited to, specific performance of the installation contracts, and the amount and nature of such relief.

41.    *Typicality*. Plaintiff's claims are typical of the claims of the members of the Class in that Defendant breached the contracts and were unjustly enriched as a result of Defendant's installation of the Dryers purchased by Plaintiff and each member of the Class.

42.    *Adequacy of Representation*. Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained counsel highly experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the Class.

43.    *Superiority*. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against the Defendant. It would thus be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

44.    In the alternative, the Class may be also certified because:

(a)     the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for Defendant;

(b)     the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c)     Defendant has acted or refused to act on grounds generally applicable to the Class thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

45.     The claims asserted herein are applicable to all customers throughout the United States who contracted with Sears for proper installation of a Dryer and whose Dryer was installed by Sears with a vent that was not in accordance with the manufacturers' requirements.

46.     Adequate notice can be given to Class members directly using information maintained in Defendant's records or through notice by publication.

47.     Damages may be calculated, in part, from the sales, service and contract information maintained in Defendant's records and the records of members of the Class, so that the cost of administering a recovery for the Class can be minimized. However, the precise amount of damages available to Plaintiff and the other members of the Class is not a barrier to class certification.

## COUNT I

### Breach of Contract-Damages

48.     Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

- - 16 - -

49.    Sears and Plaintiff entered into a contract whereby Sears agreed to provide installation services, pursuant to the manufacturers' specifications, to its customers purchasing Dryers, including the Plaintiff. In return, Plaintiff agreed to pay Sears a sum of money for the installation services.

50.    Upon information and belief, the contracts entered into by Sears and Plaintiff are identical or substantially similar to agreements entered into between Sears and all other Class members.

51.    As described above, Sears breached its contracts with Plaintiff and the Class by not installing the Dryers according to the manufacturers' specifications.

52.    As a direct and proximate result of Sears' breach, Plaintiff and the Class have been damaged.

53.    All conditions precedent to this claim have been waived or satisfied.

54.    Plaintiff seeks to obtain a pecuniary benefit for the Class in the form of all damages from Sears. Plaintiff's counsel are entitled to recover their reasonable attorneys' fees and expenses as a result of the conference of a pecuniary benefit on behalf of the Class, and will seek an award of such fees and expenses at the appropriate time.

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for relief and judgment against Sears as follows:

A.    For an order certifying the Class under the appropriate provisions of Rule 23, as well as any appropriate subclasses, and appointing Plaintiff and her legal counsel to represent the Class;

B.    Awarding damages sustained by Plaintiff and the Class as a result of Sears' unlawful acts and conduct;

C.    For pre- and post-judgment interest to the Class, as allowed by law;

D.    For reasonable attorneys' fees and costs to counsel for the Class if and when pecuniary benefits are obtained on behalf of the Class; and

E.    Granting such other and further relief as is just and proper.


## COUNT II

### Breach of Contract-Specific Performance

55.    Plaintiff hereby incorporates by reference the allegations in the preceding paragraphs as though fully set forth herein.

56.    This cause of action is pled in the alternative of Count I.

57.    Sears and Plaintiff entered into a valid, binding, and enforceable contract whereby Sears agreed to provide installation services, within the manufacturers' specifications, to consumers purchasing Dryers, including the Plaintiff. In return, Plaintiff agreed to pay Sears a flat rate for the installation services.

58.    Upon information and belief, the contracts entered into by Sears and Plaintiff are identical or substantially similar to agreements entered into between Sears and all other Class members.

59.    The terms of the installation contracts are clear, definite and unequivocal.

60.    Plaintiff and the Class have complied with each and every term of the contract by paying Sears a flat rate for the installation services.

61.    As described above, Sears has failed or refused to perform its part of the contract with Plaintiff and the Class by not installing the Dryers according to the manufacturers' specifications.

62.    Accordingly, Plaintiff and the Class seek the remedy of specific performance.

63.    All conditions precedent to this claim have been waived or satisfied.

64.     Plaintiff seeks to obtain a non-pecuniary benefit for the Class in the form of specific performance under the installation contracts by Sears. Plaintiff's counsel are entitled to recover their reasonable attorneys' fees and expenses as a result of the conferment of a non-pecuniary benefit on behalf of the Class, and will seek an award of such fees and expenses at the appropriate time.

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for relief and judgment against Sears as follows:

A.      For an order certifying the Class under the appropriate provisions of Rule 23, as well as any appropriate subclasses, and appointing Plaintiff and her legal counsel to represent the Class;

B.      Awarding Plaintiff and the Class specific performance of the installation contracts, requiring Sears to re-install the Dryers according to the manufacturers' specifications;

C.      For reasonable attorneys' fees and costs to counsel for the Class if and when non-pecuniary benefits are obtained on behalf of the Class; and

D.      Granting such other and further relief as is just and proper.

### COUNT III

#### Unjust Enrichment

65.     Plaintiff hereby incorporates by reference the allegations in the preceding paragraphs as though fully set forth herein.

66.     This cause of action is pled in the alternative of all contract-based causes of action.

67.     Sears had knowledge of the improper installation of the Dryers.

68.     During the class period, Plaintiff and Class members conferred upon Sears, without knowledge of the substandard installation, payment for the installation services, benefits that were non-gratuitous.

69.     Sears accepted or retained the non-gratuitous benefits conferred by Plaintiff and the Class members despite Sears' knowledge of the substandard installations.

70.    Retaining the non-gratuitous benefits conferred upon Sears by Plaintiff and the Class members under these circumstances made Sears' retention of the non-gratuitous benefits unjust and inequitable.

71.    Because Sears' retention of the non-gratuitous benefits conferred by Plaintiff and the Class members is unjust and inequitable, Sears must pay restitution in the manner established by the Court, in addition to any other equitable remedy the Court may choose to impose.

72.    Accordingly, Plaintiff and members of the Class seek full restitution of the Sears' enrichment, benefits and ill-gotten gains acquired as a result of the unlawful and/or wrongful conduct alleged herein.

73.    Plaintiff and the Class have no adequate remedy at law.

74.    Plaintiff seeks to obtain a pecuniary benefit for the Class in the form of all reimbursement, restitution and disgorgement from Sears. Plaintiff's counsel are entitled to recover their reasonable attorneys' fees and expenses as a result of the conferment of a pecuniary benefit on behalf of the Class, and will seek an award of such fees and expenses at the appropriate time.

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for relief and judgment against Sears as follows:

A.    For an order certifying the Class under the appropriate provisions of Rule 23, as well as any appropriate subclasses, and appointing Plaintiff and her legal counsel to represent the Class;

B.    Awarding reimbursement, restitution and disgorgement from Sears of the benefits conferred by Plaintiff and the Class;

C.    For pre- and post-judgment interest to the Class, as allowed by law;

D.    For reasonable attorneys' fees and costs to counsel for the Class if and when pecuniary benefits are obtained on behalf of the Class; and

E.    Granting such other and further relief as is just and proper.

- - 20 - -

## COUNT IV

### Money Had and Received

75.    Plaintiff hereby incorporates by reference the allegations in the preceding paragraphs as though fully set forth herein.

76.    This cause of action is pled in the alternative of all contract-based causes of action.

77.    As a result of the conduct alleged herein, Sears has improperly received monies from Plaintiff and the Class it was not legally entitled to receive.

78.    Plaintiff and members of the Class have a claim for improperly paid monies to Sears resulting from Sears' improper installation of the Dryers.

79.    Equity and good conscience require that Sears pay over such additional monies, described above, to Plaintiff and the Class.

80.    As a direct and proximate result of Sears' misconduct, Plaintiff and members of the Class have suffered injury and are entitled to reimbursement, restitution and disgorgement in the amount necessary to restore them to the position they would have been in if Sears had not improperly installed the Dryers.

81.    Plaintiff seeks to obtain a pecuniary benefit for the Class in the form of reimbursement, restitution and disgorgement from Sears. Plaintiff's counsel are entitled to recover their reasonable attorneys' fees and expenses as a result of the conference of a pecuniary benefit on behalf of the Class, and will seek an award of such fees and expenses at the appropriate time.

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for relief and judgment against Sears as follows:

A.    For an order certifying the Class under the appropriate provisions of Rule 23, as well as any appropriate subclasses, and appointing Plaintiff and her legal counsel to represent the Class;

B.      Awarding reimbursement, restitution and disgorgement from Sears of the benefits conferred by Plaintiff and the Class;

C.      For pre- and post-judgment interest to the Class, as allowed by law;

D.      For reasonable attorneys' fees and costs to counsel for the Class if and when pecuniary benefits are obtained on behalf of the Class; and

E.      Granting such other and further relief as is just and proper.

## COUNT V

### Injunctive Relief

82.      Plaintiff hereby incorporates by reference the allegations in the preceding paragraphs as though fully set forth herein.

83.      Plaintiff has no adequate remedy at law for future unlawful conduct by Sears in connection with its installation of Dryers to Sears' customers.

84.      Contrary to the mandates of the **WARNING** found in the manufacturers' installation guide, user guide, and on the back of the Dryer, Sears continues to install the wrong Dryer vents when installing Dryers for the Class.

85.      The continuing nature of Sears' acts would necessitate a separate action by Plaintiff and each Class member for damages for each act and would subject Plaintiff, each Class member, Sears, and this Court to the expense, annoyance, and inconvenience of a multiplicity of suits.

86.      For these reasons, the failure of Sears to uphold its contractual obligations to install Dryer vents which are safe and meet manufacturer requirements causes irreparable injury to Plaintiff and the Class.

87.      Plaintiff and the Class have a substantial likelihood of success on the merits of their claims (*i.e.*, Counts I through IV, *infra*), since Sears' liability is clear and self-evident.

88.    An injunction prohibiting Sears from continuing to engage in practices that are likely to cause severe injury or death and violate the manufacturers' requirements for Dryer vents will serve the public interest since it will prevent injury or death, will ensure that manufacturer warranties are not violated, and will prevent Sears from causing damage to Plaintiff and the Class, as well as their families.

89.    Plaintiff and the Class are entitled to an injunction prohibiting Sears from continuing to engage in practices alleged herein.

WHEREFORE, Plaintiff demands the following relief:

A.    An order certifying the Class under the appropriate provisions of Rule 23, as well as any appropriate subclasses, and appointing Plaintiff and her legal counsel to represent the Class;

B.    For the named Plaintiff and the Class, injunctive relief against Sears as this Court deems necessary and proper including entering an injunction against Sears which requires Sears to install only Dryer vents which adhere to the **WARNING** and/or to the manufacturers' requirements;

C.    For reasonable attorneys' fees and costs to counsel for the Class if and when non-pecuniary benefits are obtained on behalf of the Class; and

D.    Granting such other and further relief in equity as is just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff, on behalf of herself and all others similarly situated, hereby demands a jury trial on all issues so triable.

DATED:  May 21, 2008                    FITZPATRICK & FITZPATRICK
                                        WILLIAM FITZPATRICK


_____

FITZPATRICK & FITZPATRICK
36 West Randolph
Suite 301
Chicago, IL 60601
Telephone: 312/553-2200

Local Counsel for Plaintiff and the Class

DAVID P. MEYER & ASSOCIATES CO., LPA
DAVID P. MEYER
1320 Dublin Road, Suite 100
Columbus, Ohio 43215
Telephone: 614/224-6000
614/224-6066 (fax)

COUGHLIN STOIA GELLER RUDMAN
  & ROBBINS LLP
PAUL J. GELLER
STUART A. DAVIDSON
120 East Palmetto Park Road, Suite 500
Boca Raton, Florida 33432
Telephone: 561/750-3000
561/750-3364 (fax)

COUGHLIN STOIA GELLER RUDMAN
  & ROBBINS LLP
ROBERT M. ROTHMAN
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

MADDOX HARGETT & CARUSO
THOMAS A. HARGETT
10100 Lantern Road, Suite 150
Fishers, Indiana 46038
Telephone: 317/598-2040
317/598-2050 (fax)


Attorneys for Plaintiff and the Class

# EXHIBIT A

# SEARS INSTALLED MERCHANDISE AGREEMENT

### Step 1—Complete Installation Checksheet

**Customer Agrees:** Sears assumes the customer's existing facilities are up to code and can accommodate a standard installation (Standard Installation: a standard installation is limited to plugging in or hooking up the merchandise to your electrical outlets or gas or plumbing connection). No repairing, plastering, painting or decorating is included unless specifically noted. It does not include any changes to your electrical, gas or plumbing systems unless specifically noted. It does not include removing or disposing of your old appliance or fixture unless specifically noted. If additional work is required to meet this criteria, it will be the customer's responsibility. Any additional charges will be quoted and approved prior to the start of the job.

*I acknowledge that I have read, completed and understand the "Product Installation Checksheet" and received a copy for my records.*

Customer Signature  X

### Step 2—Read Sears Installation Warranty

**Sears Installation Warranty:** IN ADDITION TO ANY WARRANTY EXTENDED TO YOU ON THE SEARS MERCHANDISE INVOLVED, WHICH WARRANTY BECOMES EFFECTIVE THE DATE THE MERCHANDISE IS INSTALLED, SHOULD THE WORKMANSHIP OF ANY SEARS ARRANGED INSTALLATION PROVE FAULTY WITHIN ONE YEAR, SEARS WILL, UPON NOTICE FROM YOU, CAUSE SUCH FAULTS TO BE CORRECTED AT NO ADDITIONAL COST TO YOU.

### Step 3—Review Terms and Conditions
## ADDITIONAL TERMS AND CONDITIONS ARE STATED ON REVERSE SIDE

### Step 4—Fill out Contractor Information

Contractor: _____

_____

Telephone: _____ _____ License No. _____

Approx. Start Date: _____ Approx. Completion Date: _____

Sales Associate: X_____

### Step 5—Include any Special Instructions and Description of Work

Special Instructions: _____

_____

_____

_____

_____

_____

**Notice to California Residents Only:** IF THIS SALE IS IN EXCESS OF $500, "YOU THE OWNER OR TENANT HAVE THE RIGHT TO REQUIRE THE CONTRACTOR TO HAVE A PERFORMANCE AND PAYMENT BOND OR REFUNDING CONTROL."

21712-010  Rev. 10/05  Sears Forms Management                    47239-HQF  Rev. 1

**Installation and Warranty Information:** I understand Sears will not install the materials but will arrange for the installation. Sears is responsible only for materials and installation furnished and arranged by Sears. Appropriate warranty information will be provided by Sears. Any materials left over after the installation has been completed are Sears property and shall be removed by Sears.

**Authorizations** (authorize Sears) 1) to arrange for a contractor (licensed where required by law) to make the installation of materials, 2) to issue a work order for this installation to a contractor, 3) to inspect the installation, 4) to pay the contractor when the installation is complete and I am responsible for any special work in this agreement.

**Delays in Installation:** I agree that Sears is not responsible for delays in delivery or installation if delay is caused by weather, fire, strikes, war, government regulations or any causes beyond its control. Any delay caused by events beyond the control of the contractor shall constitute abandonment and shall not be included in calculating time frames for payment or performance. THESE DATES ARE SUBJECT TO CHANGE AT THE TIME THE CONTRACT IS ACCEPTED BY SEARS OR AT ANY OTHER TIME BY MUTUAL WRITTEN AGREEMENT. I UNDERSTAND THAT THIS IS ONLY AN ESTIMATE DATE AND WILL BE CONTACTED PRIOR TO THE DATE TO SCHEDULE THE ACTUAL INSTALLATION.

**Oral Agreements and Changes of Agreement:** I understand there are no oral agreements. Everything I expect Sears to do has been included, in writing, in this agreement. Nothing can be changed in this agreement except in writing on a separate estimate and proposal form or change of specifications form, accepted by myself and Sears.

**Responsibility of Buyer:** I agree that any information or measurements that I give to Sears are correct and complete. I am responsible for any special work in this agreement.

**Standard Installation:** A standard installation is limited to plugging in or hooking up the merchandise to your electrical outlets or gas or plumbing connections. No repairing, plastering, painting or decorating is included unless specifically noted. It does not include any changes to your electrical, gas or plumbing systems unless specifically noted. It does not include removing or disposing of your old appliance or fixture unless specifically noted. The contractor shall comply with all local requirements for building permits, inspections and zoning.

**Waiver of Lien—Transaction $2,500 or less** (Not Applicable in Florida): If the cash price of this proposal, including applicable taxes, does not exceed $2,500, Sears, Roebuck and Co. hereby waives any right to retain or require any lien, including mechanic's, supplier's or materialman's lien, in the customer's home or principle dwelling in connection with any sale under this proposal, other than a lien created by a court judgment. Sears, Roebuck and Co. will satisfy any lien asserted by a Sears authorized contractor, subcontractor, materialman or supplier in connection with this proposal.

**Cancellation:** All cancellation rights of parties must be disclosed. Consult your Attorney for any specific cancellation requirements.

The following licenses are held by or on behalf of Sears, Roebuck and Co.: AK (Gen. Contr. - Exc. Res. #675); AR (Contr. #011774D493); AZ (ROC013509, ROC079967, ROC080918, ROC092554, ROC080304, ROC080305, ROC079952); CA (HVAC #25455-D20; Plum #25455-C36; Elec. #25455-C10); CT (HVAC #308530); FL (Gen. Contr. #CBC015949, HVAC #CAC057299, Plum. #CFC857295); GA (Reg. GN1000489); HI (Classes A, C-4285, C-68LA); IL (Plum. #056105339); KY (HVAC #M03912); LA (Mech./Spec. Contr. #5526, LMP #1885); MA (Home Imp. #103493 all plumbing and electrical services performed by licensed subcontractors); MD (MHIC #32117 Steven Feldman, HVAC #6528); NJ (A substantial part of the work which we undertake is done via Sears (preservice may be performed by independent licensed plumbing contractors or subcontractors); NC (Contr. #0054530 0005543 - C-1, C-21); OR (Gen. Contr. #0001061); RI (Gen. Contr. #4657); Rockland County, NY (General Subcontractor, TX (HVAC Lic. Nos. TACLB020401E, 019005E, 002235C, 013523C); VA (Class A Contr. #2705057009); WA (Gen. Contr. #SEARSR-372NT); WV (Gen. Bldg. Spec. #WV008529). Some services performed by Sears associates. Other services and installation performed by Sears-Authorized licensed contractors; additional Sears license information available upon request. Electrical services not available in NJ.

## NOTICE TO CALIFORNIA RESIDENTS

Under the California Mechanic's Lien Law, any contractor, subcontractor, laborer, supplier or other person or entity who helps improve your property, but is not paid for his/her work or supplies, has the right to place a lien on your home, land and property where the work was performed and to sue you in court to obtain payment. This means that after a court hearing your home, land and property could be sold by a court officer and the proceeds of the sale used to satisfy what you owe. This can happen even if you have paid your contractor in full if the contractor's subcontractors, laborers or suppliers remain unpaid. To preserve their right to file a claim or lien against your property, certain claimants such as subcontractors or material suppliers are required to provide you with a document called "Preliminary Notice". Contractors and borrowers who contract with owners directly do not have to provide such notice since you are aware of their existence as an owner. A Preliminary Notice is not a lien against your property. Its purpose is to notify you of persons or entities that may have a right to file a lien against your property if they are not paid. In order to protect their lien rights, a contractor, subcontractor, supplier or laborer must file a mechanic's lien with the county recorder which then becomes a recorded lien against your property. Generally, the maximum time allowed for filing a mechanic's lien against your property is 90 days after substantial completion of your project.

TO INSURE EXTRA PROTECTION FOR YOURSELF AND YOUR PROPERTY, YOU MAY WISH TO TAKE ONE OR MORE OF THE FOLLOWING STEPS:

1) Require that your contractor supply you with a payment and performance bond (not a license bond), which provides that the bonding company will either complete the project or pay damages up to the amount of the bond. This payment and performance bond as well as a copy of the construction contract should be filed with the county recorder for your further protection. The payment and performance bond will usually cost from 1 to 5 percent of the contract amount depending on the contractor's bonding ability. If the contractor cannot obtain such bonding, it may indicate his or her financial incapacity.

2) Require that payments be made directly to subcontractors and material suppliers through a joint control. Funding services may be available for a fee in your area which will establish voucher and/or other means of payment to your contractor. These services may also provide you with lien waivers and other forms of protection. Any joint control agreement should be included, the addendum approved by the Registrar.

3) Issue joint checks for payment, made out to both your contractor and subcontractors or material suppliers involved in the project. The joint checks should be made payable to the persons or entities which send preliminary notices to you. Those persons or entities have indicated that they have lien rights on your property, therefore you need to protect yourself. This will help to insure that all persons that receive payment are actually paid.

4) Upon making payments on any completed phase of the contract and before making any further payments, require your contractor to provide you with unconditional "Waiver and Release" forms signed by each material supplier, subcontractor and laborer involved in that portion of work for which payment was made. The statutory lien releases are set forth in exact language in Section 3262 of the Civil Code. Most stationery stores will sell the "Waiver and Release" forms if your contractor does not have them. The material suppliers, subcontractors and laborers that you obtain releases from are those persons or entities who have filed preliminary notices with you. If you are not certain of the material suppliers, subcontractors and laborers working on your project, you may obtain a list from your contractor. On projects involving improvements to a single family residence or a duplex owned by individuals, the persons signing these releases lose the right to file a mechanics' lien claim against your property. In other types of construction, this protection may still be important, but may not be as complete.

To protect yourself under this option, you must be certain that all material suppliers, subcontractors and laborers have signed the "Waiver and Release" forms. If a mechanics' lien has been filed against your property, it can only be voluntarily released by a recorded "Release of Mechanics' Lien" signed by the person or entity that filed the mechanics' lien against your property unless the lawsuit to enforce the lien was not timely filed. You should not make any final payments until any and all such liens are removed. You should consult an attorney if a lien is filed against your property.

The work specified on page 1 will begin approximately 20 days from the date of sale shown on page 1 and will be substantially completed within 90 days thereafter unless different estimated starting and/or completion dates are shown on page 1. Failure to substantially commence work within 20 days from the approximate date specified in this contract without lawful excuse is a violation of the Contractors License Law. Substantial commencement of work shall mean either the physical delivery of materials onto the premises or the performance of any labor.

## NOTICE TO JOHNSON COUNTY, KANSAS RESIDENTS:

A permit is required for water heater installations in the cities of Gardner, Lenexa, Olathe, Overland Park, Prairie Village and Shawnee. If you choose to have your water heater installed by Sears you will be charged separately for this service. If a permit is required you will be charged an additional amount for the permit. The Sears-authorized contractor who performs the installation will request the permit from your city. IMMEDIATELY FOLLOWING INSTALLATION OF THE WATER HEATER YOU MUST CALL YOUR CITY TO SCHEDULE AN INSPECTION.

## NOTICE TO MARYLAND RESIDENTS ONLY: M.H.I.C. #321

Notice: All home improvement contractors and subcontractors must be licensed by the Maryland Home Improvement Commission. Inquiries regarding a contractor or subcontractor should be directed to the Home Improvement Commission, telephone: (410) 333-6309.

## NOTICE TO WASHINGTON RESIDENTS ONLY:

The contractor is registered with the state of Washington, registration no. _____ as a general/specialty contractor and has posted with the state a bond or cash deposit of $6,000/$4,000 for the purpose of satisfying claims against the contractor for negligent or improper work or breach of contract in the conduct of the contractor's business. The expiration date of this contractor's registration is _____. This bond or cash deposit may not be sufficient to cover a claim which might arise from the work done under your contract. If any supplier of materials used in your construction project or any employee of the contractor or subcontractor is not paid by the contractor or subcontractor on your job, your property may be liened to secure payment. If you wish additional protection, you may request the contractor to provide you with original "lien release" documents from each supplier or subcontractor on your project. The contractor is required to provide you with further information about lien release documents if you request it. General information is also available from the Department of Labor and Industries.

## NOTICE TO NEW MEXICO RESIDENTS ONLY:

Construction industries licensing act does not protect the customer if the contractor defaults.

## NOTICE TO NEW YORK RESIDENTS ONLY:

Any contractor, subcontractor or materialman who provides home improvement goods and services pursuant to your home improvement contract and was not paid may have a valid legal claim against your property known as a mechanics' lien. Any mechanics' lien filed against your property may be discharged. Payment of the agreed-upon price under the home Improvement contract prior to filing a mechanics' lien may not invalidate such lien. The owner may contact an attorney to determine his rights to discharge the mechanics' lien.

In accordance with Subdivision Four of Section 71-A of the New York Lien Law, Sears has posted a bond with SAFECO INSURANCE COMPANY OF AMERICA, a surety company licensed by the State of New York, guaranteeing the proper application by Sears of any cash payments or cash deposit received from the customer under this home improvement contract prior to substantial completion of the work. The surety bond is in lieu of the escrow requirements of the New York Lien Law. Written notification of any and all claims asserted by the customer under this bond, along with a copy of the customer's contract, should be sent to Sears, Roebuck and Co., c/o Director of Safety, Quality and Compliance, PS-290A

# EXHIBIT B

## Checking Your Vent

Your dryer must be properly installed and vented to achieve maximum drying efficiency and shorten drying times. Use the minimum recommended installation clearances found in the Installation Instructions. See the Installation Instructions for more information.

⚠️ **WARNING**



**Fire Hazard**

Use a heavy metal vent.

Do not use a plastic vent.

Do not use a metal foil vent.

Failure to follow these instructions can result in death or fire.

If the dryer is not properly installed and vented, it will not be covered under the warranty. Proper venting of your dryer is important for satisfactory drying results. See the Installation Instructions for more detail.

**NOTE:** Service calls caused by improper venting will be paid for by the customer, whether it was a paid installation or self-installed.

1. Do not use plastic vent or metal foil vent. Use 4" (10.2 cm) metal or flexible metal vent. Do not kink or crush flexible metal vent. It must be completely extended to allow adequate exhaust air to flow. Check vent after installation. Refer to the Installation Instructions for proper length requirements of vent.

2. Use a 4" (10.2 cm) exhaust hood.



3. Use the straightest path possible when routing the vent.



Good          Better

4. Use clamps to seal all joints. Do not use duct tape, screws or other fastening devices that extend into the interior of the vent to secure vent.

5. Clean exhaust vent periodically, depending on use, but at least every 2 years, or when installing your dryer in a new location. When cleaning is complete, be sure to follow the Installation Instructions supplied with your dryer for final product check.

# EXHIBIT C



# ⚠️ WARNING

### Fire Hazard

Use a heavy metal vent.

Do not use a plastic vent.

Do not use a metal foil vent.

Failure to follow these instructions can result in death or fire.

**WARNING:** To reduce the risk of fire, this dryer MUST BE EXHAUSTED OUTDOORS.

**IMPORTANT:** Observe all governing codes and ordinances. The dryer exhaust must not be connected into any gas vent, chimney, wall, ceiling, or a concealed space of a building.

## If using an existing vent system

- Clean lint from the entire length of the system and make sure exhaust hood is not plugged with lint.
- Replace any plastic or metal foil vent with rigid or flexible heavy metal vent.
- Review Vent system chart. Modify existing vent system if necessary to achieve the best drying performance.

## If this is a new vent system

### Vent material

- Use a heavy metal vent. Do not use plastic or metal foil vent.
- 4" (10.2 cm) heavy metal exhaust vent and clamps must be used. DURASAFE™ venting products are recommended.



*4" (10.2 cm) heavy metal exhaust vent*

DURASAFE™ vent products can be purchased from your dealer. For further information, please call **1-800-4-MY-HOME°** (1-800-469-4663) or visit our website at **www.sears.com** or **www.sears.ca**.

### Rigid metal vent

- For best drying performance, rigid metal vents are recommended.
- Rigid metal vent is recommended to avoid crushing and kinking.

### Flexible metal vent

- Flexible metal vents are acceptable only if accessible for cleaning.
- Flexible metal vent must be fully extended and supported when the dryer is in its final location.

- Remove excess flexible metal vent to avoid sagging and kinking that may result in reduced airflow and poor performance.
- Do not install flexible metal vent in enclosed walls, ceilings or floors.

### Elbows

45° elbows provide better airflow than 90° elbows.



Good          Better

### Clamps

- Use clamps to seal all joints.
- Exhaust vent must not be connected or secured with screws or other fastening devices that extend into the interior of the duct. Do not use duct tape.



Clamp

### Exhaust

Recommended hood styles are shown here.



(10.2 cm)
(10.2 cm)
A. Louvered hood style
B. Box hood style

The angled hood style (shown here) is acceptable.



- An exhaust hood should cap the vent to keep rodents and insects from entering the home.
- Exhaust hood must be at least 12" (30.5 cm) from the ground or any object that may be in the path of the exhaust (such as flowers, rocks or bushes, snow line, etc.).
- Do not use an exhaust hood with a magnetic latch.

**Improper venting can cause moisture and lint to collect indoors, which may result in:**

- Moisture damage to woodwork, furniture, paint, wallpaper, carpets, etc.
- Housecleaning problems and health problems.

# EXHIBIT D

# PROTECTION AGREEMENTS

## Master Protection Agreements

Congratulations on making a smart purchase. Your new Kenmore® product is designed and manufactured for years of dependable operation. But like all products, it may require preventive maintenance or repair from time to time. That's when having a Master Protection Agreement can save you money and aggravation.

*Purchase a Master Protection Agreement now and protect yourself from unexpected hassle and expense.*

The Master Protection Agreement also helps extend the life of your new product. Here's what's included in the Agreement:

✔ **Expert service** by our 12,000 professional repair specialists

✔ **Unlimited service and no charge** for parts and labor on all covered repairs

✔ **"No-lemon" guarantee** – replacement of your covered product if four or more product failures occur within twelve months

✔ **Product replacement** if your covered product can't be fixed

✔ **Annual Preventive Maintenance Check** at your request – no extra charge

✔ **Fast help by phone** – phone support from a Sears technician on products requiring in-home repair, plus convenient repair scheduling

✔ **Power surge protection** against electrical damage due to power fluctuations

✔ **Rental reimbursement** if repair of your covered product takes longer than promised

Once you purchase the Agreement, a simple phone call is all that it takes for you to schedule service. You can call anytime day or night, or schedule a service appointment online.

Sears has over 12,000 professional repair specialists, who have access to over 4.5 million quality parts and accessories. That's the kind of professionalism you can count on to help prolong the life of your new purchase for years to come. Purchase your Master Protection Agreement today!

**Some limitations and exclusions apply. For prices and additional information, call 1-800-827-6655.**

## Sears Installation Service

For Sears professional installation of home appliances, garage door openers, water heaters, and other major home items, in the U.S.A. call **1-800-4-MY-HOME®**.

# KENMORE APPLIANCE WARRANTY

## ONE YEAR LIMITED WARRANTY

When installed, operated and maintained according to all instructions supplied with the product, if this appliance fails due to a defect in material or workmanship within one year from the date of purchase, call 1-800-4-MY-HOME® to arrange for free repair.

If this appliance is used for other than private family purposes, this warranty applies for only 90 days from the date of purchase.

**THIS WARRANTY COVERS ONLY DEFECTS IN MATERIAL AND WORKMANSHIP. SEARS WILL NOT PAY FOR:**

1. Expendable items that can wear out from normal use, including but not limited to filters, belts, light bulbs, and bags.

2. A service technician to instruct the user in correct product installation, operation or maintenance.

3. A service technician to clean or maintain this product.

4. Damage to or failure of this product if it is not installed, operated or maintained according to all instructions supplied with the product.

5. Damage to or failure of this product resulting from accident, abuse, misuse or use for other than its intended purpose.

6. Damage to or failure of this product caused by the use of detergents, cleaners, chemicals or utensils other than those recommended in all instructions supplied with the product.

7. Damage to or failure of parts or systems resulting from unauthorized modifications made to this product.

## DISCLAIMER OF IMPLIED WARRANTIES; LIMITATION OF REMEDIES

Customer's sole and exclusive remedy under this limited warranty shall be product repair as provided herein. Implied warranties, including warranties of merchantability or fitness for a particular purpose, are limited to one year or the shortest period allowed by law. Sears shall not be liable for incidental or consequential damages. Some states and provinces do not allow the exclusion or limitation of incidental or consequential damages, or limitations on the duration of implied warranties of merchantability or fitness, so these exclusions or limitations may not apply to you.

This warranty applies only while this appliance is used in the United States and Canada.

This warranty gives you specific legal rights, and you may also have other rights which vary from state to state.

**Sears, Roebuck and Co.
Dept. 817WA, Hoffman Estates, IL 60179**

**Sears Canada Inc.
Toronto, Ontario, Canada M5B 2B8**