UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

JOVAN JONES, Individually and on Behalf of )    **Case No: 08 CV 2951**
All Others Similarly Situated,                         )
                                         )
                    Plaintiff,        )
                                          )    **Judge Leinenweber**
      vs.                                 )
                                          )    **Magistrate Judge Cox**
SEARS, ROEBUCK & CO.,                  )
                                          )
                    Defendant.     )
                                          )
_____ )

## <u>PLAINTIFF'S COMBINED MOTION FOR<br>PRELIMINARY INJUNCTION AND EXPEDITED DISCOVERY</u>

Pursuant to Fed. R. Civ. P. 65, plaintiff Jovan Jones ("Plaintiff"), individually and on

behalf of all others similarly situated, hereby moves the Court for a preliminary injunction that:

(a) enjoins defendant Sears, Roebuck & Co. ("Sears") from continuing to install vents on its
     customers' clothes dryers that are not in compliance with the manufacturer's requirements
     that mandate the use of only heavy metal vents; and

(b) requires Sears to provide notice to its customers that the vents installed on their dryers are
     improper, if they are not in compliance with manufacturer requirements.

Moreover, in order to present further evidence in support of its motion for preliminary

injunction, Plaintiff also moves this Court for expedited discovery pursuant to Fed. R. Civ. P. 26,

30, 33, and 34. Pursuant to Local Rule 37.2, Counsel for Plaintiff Matthew W. Wilson and

counsel for Defendant, Mark Brand spoke by telephone at approximately 4 p.m. on July 10,

2008, in a good faith attempt to resolve the discovery issue that is the subject of this motion.

They were unable to reach an accord. Defendant Sears would not agree to provide any discovery

on an expedited basis; Plaintiff therefore brings the present motion.

When installing a clothes dryer, the installer must attach a vent to the back of the dryer so that hot air is blown out of the dryer and out of the user's home. As set forth in Plaintiff's Class Action Complaint filed on May 21, 2008, the vast majority, if not all, of the dryers Sears sells and installs contain the following warning (or warnings of similar import) on the dryers themselves and/or the installation manual concerning the installation of vents:



So that there is no misunderstanding, the manufacturers explain in both words and in pictures that the installation of vents other than heavy metal vents is a "fire hazard." Notwithstanding these clear warnings that mandate the specific materials that must be used in order to avoid the risk of "death or fire," Sears often ignores the warning and installs dryers without using the vents mandated by the manufacturer.

As the manufacturers warn, the installation of vents other than "heavy metal" vents is a serious and dangerous fire hazard which can result in death or serious bodily injury to Sears' customers nationwide. For this reason, and as more fully explained in the attached Memorandum in Support, Plaintiff respectfully requests the following from the Court:

(1) Issue a preliminary injunction enjoining Sears from installing dryers in a manner in

2

which does not comply with the manufactures recommendations and further to notify or otherwise warn any customers whose dryers have been improperly or unsafely installed.;

(2) Order Sears to respond to expedited written discovery within 20 days and product a witness(es) pursuant to the expedited Notice of Deposition within 30 days to allow the Plaintiff the opportunity to present further evidence in favor of its preliminary injunction motion; and

(3) Schedule a hearing on Plaintiff's Motion for Preliminary Injunction at a date and time approximately 14 days following the date the Court orders Sears to respond to the expedited discovery, and as convenient for the Court .

Plaintiff requests that bond be set at $1.00.

Respectfully submitted:

FITZPATRICK & FITZPATRICK
WILLIAM FITZPATRICT

WILLIAM FITZPATRICK
FITZPATRICK & FITZPATRICK
36 West Randolph
Suite 301
Chicago, IL 60601
Telephone: 312/553-2200

Local Counsel for Plaintiff and the Class

DAVID P. MEYER & ASSOCIATES CO., LPA
DAVID P. MEYER
MATTHEW R. WILSON
1320 Dublin Road, Suite 100
Columbus, Ohio 43215
Telephone: 614/224-6000
614/224-6066 (fax)

3

*Pro hac vice* to be filed

COUGHLIN STOIA GELLER RUDMAN
  & ROBBINS LLP
PAUL J. GELLER
STUART A. DAVIDSON
120 East Palmetto Park Road, Suite 500
Boca Raton, Florida 33432
Telephone: 561/750-3000
561/750-3364 (fax)

*Pro hac vice* to be filed

COUGHLIN STOIA GELLER RUDMAN
  & ROBBINS LLP
ROBERT M.ROTHMAN
58 South Service Road, Suite 200
Melville, New York 11747
Telephone: 631/367-7100
631/367-1173 (fax)

*Pro hac vice* to be filed

MADDOX HARGETT & CARUSO, P.C.
THOMAS A. HARGETT
10100 Lantern Road, Suite 150
Fishers, Indiana 46038
Telephone: 317/598-2040
317/598-2050 (fax)

*Pro hac vice* to be filed

Attorneys for Plaintiff and the Class

4

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOVAN JONES, Individually and on Behalf of ) All Others Similarly Situated, ) ) Plaintiff, ) ) vs. ) ) SEARS, ROEBUCK & CO., ) ) Defendant. ) ) ) | Case No: 08C2951 Judge Leinenweber Magistrate Judge Cox |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF COMBINED MOTION FOR PRELIMINARY INJUNCTION AND FOR EXPEDITED DISCOVERY

## I.   INTRODUCTION

Sears has installed clothes dryers and other household appliances for its customers for decades. Providing a safe installation is the most fundamental duty of any installer. Sears encourages its customers to hire Sears and leave the installation to the "professionals." Unfortunately, Sears fails to fulfill its vital responsibility to provide, first and foremost, installations that are safe. Sears, through its actions and refusals to act, has created conditions under which dryer fires – and thus, serious bodily injury or death – are much more likely. Elevating its financial bottom line above its obligation to provide safe dryer installations, Sears has instead chosen to install cheaper, less-safe dryer vent materials, thereby immediately, recurrently and irreparably harming the plaintiff class – i.e., its customers.

Every day that this situation continues, more and more of Sears' customers have dryer vents installed in their homes that are contrary to the dryer manufacturers' explicit safety instructions. The

manufacturers instruct, nearly uniformly, that heavy metal vents *must* be used. There are two types of heavy metal vents: (1) rigid metal; and (2) semi-rigid metal:



Rigid Metal



Semi-Rigid Metal

The manufactures *do not* permit metal foil or plastic, which are pictured below.



Plastic



Metal Foil

That dryer manufacturers would mandate the use of heavy metal vents is not surprising, since numerous governmental, consumer, and trade groups have cautioned against the use of other types of vents.

In 2003, the Consumer Product Safety Commission warned that to prevent a fire, owners should "[r]eplace plastic or foil, accordion-type ducting material with rigid or corrugated semi-rigid metal duct. Most manufacturers specify the use of a rigid or corrugated semi-rigid metal duct, which provides maximum airflow. The flexible plastic or foil type duct can more easily trap lint and is more susceptible to kinks or crushing, which can greatly reduce the airflow."

2

The Federal Emergency Management Agency ("FEMA") noted similar concerns in 2007: "All manufacturers now state in their manuals not to use plastic flexible dryer ducts between the vent and the clothes dryer. *** Flexible vents can sag, allowing lint to build up and catch on fire if it comes in contact with a sufficient amount of heat. If a fire starts beneath the dryer when the motor overheats, then the drafts from the dryer can pull that fire up into the duct and venting allowing a house fire to develop."[1]

Consumer Reports found that "[w]hen it comes to dryer fires, flexible dryer ducts made of foil or plastic are the most problematic because they can sag and let lint build up at low points. Ridges can also trap lint. Metal ducts, either flexible or rigid, are far safer because they don't sag, so lint is less likely to accumulate. What's more, if a fire does start, a metal duct is more likely to contain it."[2]

The Association of Home Appliance Manufacturers ("AHAM"), the trade association of the home appliance manufacturing industry, submitted comments to the 1999 edition of the National Fuel Gas Code (ANSI Z223.1/NFPA 54) to specify that exhaust and transition vents shall not be constructed of coiled-wire foil or plastic material and that vents be installed in accordance with the clothes dryer manufacturer's installation instructions. AHAM recommends that clothes dryer vents be constructed of rigid sheet metal or corrugated semi-rigid sheet metal material.[3]

According to the U.S. Fire Administration (Division of U.S. Department of Homeland Security), clothes dryers were involved in an estimated 15,600 U.S. structure fires, 15 deaths,

---

[1]    FEMA (www.usfa.dhs.gov/statistics/reports) Tropical Fire Research Series, vol. 1, issue 1 (Jan. 2007).

[2]    *See* http://www.nuflodryerventcleaning.com/1952920.html.

3

400 injuries and approximately $99 million in direct property damage, *annually*, between 2002–2004. The conclusion is clear: the correct installation and use of the heavy metal dryer vent as mandated by the manufacturers greatly reduces the risk of lint build-up and exhaust pipe restriction. Because Sears has failed to meet its obligation to install dryers pursuant to the manufacturers' mandates, and is continuing to improperly install dryer vents in a manner that the manufacturers deem to be unsafe, the Court should require it to provide proper installations and to provide notice to its customers that the vents installed on their dryers are improper, if they are not installed in compliance with the manufacturer's requirement. Accordingly, Plaintiff respectfully requests that the Court issue a preliminary injunction that will prevent irreparable harms through the following measures:

> Within 14 days of the date of the Order, Sears must develop a detailed plan to: (i) ensure that each former Sears customer is notified, using the best notice practicable, that his or her dryer vent is improper if it is not in compliance with the manufacturer's requirement; and (ii) ensure that each new Sears customer who buys a dryer from Sears and has it installed by Sears receives a dryer vent that conforms to the dryer manufacturer's specifications. Any such plan must include at least the following:
> - Sears must immediately communicate in writing with each and every one of its installers, to inform them that they must only install dryer vents that meet the specifications of each particular dryer manufacturer; and
> - For each new installer hired by Sears, ensure that each installer also receives a copy of the written instruction referenced above.

This Court has a unique obligation to step in where Sears has failed and to order Sears to provide its customers with dryer installations that are safe and that comply with manufacturers' instructions.

---

[3]    *See* http://www.aham.org/consumer/ht/a/GetDocumentAction/id/859.

4

## II.    STATEMENT OF FACTS

The following warning appears on Plaintiff's dryer, and the same or similar warning

accompanies virtually every dryer sold by Sears:



*See* Declaration of Jovan Jones in Support of Plaintiff's Motion for Preliminary Injunction

("Jones Decl."), ¶ 2, attached hereto and incorporated herein by reference as Exhibit "A."  See

also Plaintiff's Complaint, ¶ 25.

Despite these unequivocal warnings, Sears did not install Plaintiff's dryer by using a

heavy metal vent, but used a metal foil vent instead, directly contrary to the manufacturer's

instructions.  Jones Decl., ¶ 3.  Making it even worse, Sears has held itself out to its customers as

particularly knowledgeable and trustworthy when it comes to installations.  Sears asks potential

customers, "Have you ever tried to install a product and later worried that a connection wasn't

safe, or that you may have missed an important step?"[4]  Holding itself and its installers out as

experts, Sears then answers its own rhetorical question, representing in writing to its prospective

customers nationwide that, "There's no need to worry anymore.  Our professional installers are

---

[4]http://www.sears.com/shc/s/nb_10153_12605_NB_InstallationRepairs?adCell=AF&keywordRedire
ct=installation

skilled, trained, experienced, and equipped with the right tools to do the job properly."[5]

Despite the fact that the instruction and warning on the dryers clearly state the specific materials that should be used during the installation of a clothes dryer, Sears – the self-styled expert – blatantly ignores it. Jones Decl., ¶ 4. Specifically, rather than following the simple directions, Sears installed the dryers without using the proper vents. *Id.*, ¶ 4. By doing so, Sears' supposedly "skilled, trained, experienced, equipped" installers created dangerous conditions that can result in death or fire.

## III.    ARGUMENT

The Supreme Court has stated, "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). To obtain a preliminary injunction, the movant must show the following:

> (1) a likelihood of success on the merits;
>
> (2) there is no adequate remedy at law;
>
> (3) irreparable harm which, absent injunctive relief, outweighs the harm the non-movant will suffer if the injunction is granted; and
>
> (4) the injunction will not harm the public interest.

*Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006); *AM Gen. Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002).

The Court employs a "sliding scale" analysis, whereby the greater the likelihood of success on the merits, the less of a showing that is required relative to risk of harm, and vice versa. *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). In deciding whether to

---

[5]http://www.sears.com/shc/s/nb_10153_12605_NB_InstallationRepairs?adCell=AF&keywordRedirect=installation

grant injunctive relief, the Court must bear in mind that the purpose of a preliminary injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Platinum Home Mortgage Corp. v. Platinum Fin. Grp., Inc.*, 149 F.3d 722, 726 (7th Cir. 1998).

The Court must also consider any consequences to the public from denying or granting the injunction. *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 812 (7th Cir. 2002). Sitting as a court of equity, the Court weighs all these factors employing a sliding-scale approach - the more likely the plaintiff's chance of success on the merits, the less the balance of harms need weigh in its favor. *Promatek,* 300 F.3d at 812.

Here, Plaintiff will likely succeed on the merits, there is no adequate remedy at law, there is grave danger of irreparable harm, and the injunction as requested is in the public interest.

Additionally, preliminary injunctive relief on behalf of a class is freely awarded on a classwide basis. 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 9:45 (3d ed. 1992). The Court may award a broad preliminary injunction without a formal class certification ruling under its general equity powers. *See, e.g., Zbarez v. Quern*, 572 F.2d 582 (7th Cir. 1978). The lack of formal class certification does not create an obstacle to classwide preliminary injunctive relief when the defendant's activities are directed generally against a class of persons.

### A. *Likelihood of Success on the Merits*

Plaintiff (and Class members) and Sears entered into contracts whereby Sears agreed to install dryers for its customers. *See* Sears' Sample Installation Contract, attached to Plaintiff's Class Action Complaint as Exhibit A; Jones Decl., ¶ 5. Without question, in return for agreeing to install the dryers for payment (in Plaintiff's case, $49, Jones Decl., ¶ 5), Sears is obligated to install the dryers in accordance with the manufacturers' requirements. Indeed, Sears unequivocally represents to its customers that it will comply with *"manufacturer instructions"* when installing dryers. Complaint at ¶¶ 13-14. By failing to install the dryers according to the

7

manufacturers' specifications, and installing a substandard metal foil or plastic vent instead, Sears breached its contracts with Plaintiff and the Class. Plaintiff and the Class have been damaged as a result, not just because they paid money to Sears, but because their homes and businesses are at a much increased risk of fire, according to the warnings by the manufacturers.[6] *See Catania v. Local 4250/5050 of Commc'ns Workers of Am.*, 359 Ill. App. 3d 718, 724, 834 N.E.2d 966, 971 (Ill. Ct. App. 2005) (elements of claim for common law breach of contract are: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff). Any customer who will have a dryer installed improperly by Sears will incur the same risk.

### B. *No Adequate Remedy at Law*

The danger to tens of thousands of persons caused by Sears' unsafe dryer installations justifies this Court exercising its authority in equity to require Sears to demonstrate that it is taking immediate steps to ensure that its dryer installations, henceforth, are performed safely and in accordance with manufacturers' instructions, and to notify Sears' former customers of the existence of unsafe and hazardous conditions in their homes and businesses. "Inadequate remedy at law does not mean wholly ineffectual; rather, the remedy must be seriously deficient as compared to the harm suffered." *Foodcomm Int'l v. Barry*, 328 F.3d 300, 304 (7th Cir. 2003). Although persons whose dryers catch fire because of Sears' improper installations would undoubtedly be able to recover damages against Sears, such money damages would of their very nature be deficient compared to the harm suffered.

---

[6] Sears' improper vent installations also caused a breach of the manufacturers' warranties on the dryers.

8

### C. *Irreparable Harm and Public Interest*

The danger to possibly tens of thousands of persons presented by unsafe dryer installations justifies this Court exercising its authority at law and in equity to require Sears to demonstrate to the Court that, on a going-forward basis, its dryer installations will be in compliance with manufacturers' instructions, and that Sears notify its former customers of the dangerous condition created by Sears. Although affirmative injunctions – injunctions in which the defendant is required to affirmatively take some action, rather than being restrained from acting – are granted only "upon the clearest equitable grounds," *W.A. Mack, Inc. v. Gen. Motors Corp.*, 260 F.2d 886, 890 (7th Cir. 1958), courts in the Seventh Circuit and elsewhere can and do issue orders for mandatory relief, including preliminary relief, in appropriate circumstances. *See, e.g., Jackson v. Ogilvie*, 426 F.2d 1333 (7th Cir. 1970) (requiring governor of Illinois to issue writ of election to fill seat in House of Representatives); *Dolezal v. Concert Health Plan*, 433 F. Supp. 2d 886, 890 (N.D. Ill. 2005) (temporary restraining order issued to require defendant to provide coverage of disputed medical treatment); *Praefke Auto Elec. & Battery Co. v. Tecumseh Prods. Co.*, 123 F. Supp. 2d 470 (E.D. Wis. 2000) (mandatory preliminary injunction proper where dealership would suffer irreparable injury if abruptly terminated). This case is one of those instances.

Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that, if it is not granted, irreparable harm will be suffered before a decision on the merits can be rendered. *Jayaraj v. Scappini*, 66 F.3d 36 (2d Cir. 1995) (internal quotations omitted). Unless the Court steps in, Americans with improperly installed dryer vents will be risking life and limb, according to the dryer manufacturers, unless their vents are replaced, and, importantly, it will be business as usual for Sears until a final judgment against it is reached in this case. In the meantime, numerous additional constomers would be put at risk of

9

"death or fire," as stated on the dryer warnings; even one more unnecessary dryer fire caused by Sears' reckless business practice is too many.

The harm is imminent, certain, and not merely speculative. This is not a case of maybe it will happen, maybe it will not. Although a dryer fire will not occur in all of the dryers Sears has improperly installed (and will continue to improperly install, if this Court does not grant this preliminary injunction), fires *will occur* in some of them, and at least in some of those, the *improper vent will be the cause*. Statistics regarding the numbers of dryer fires and what is known about their cause make that certain. *See, e.g., United States v. Price*, 688 F.2d 204, 213-14 (3d Cir. 1982) ("An endangerment is 'imminent' and actionable when it is shown that it presents a threat to human health ..., *even if it may not eventuate*....") (emphasis added). Therefore, some persons *will be* irreparably harmed – seriously harmed – if Sears is not preliminarily enjoined. Preventing such harm is strongly in the public interest.

Moreover, Sears should already be doing - and have already done - what Plaintiff asks for here. What is necessary is essentially increased diligence by Sears. Sears needs to take the actions required to *ensure* that it installers are doing the job right, and to notify its former customers about the dangerous condition in their homes and businesses. Sears' laxity is the cause of the problem.

### C. *The Security Bond Should Be Nominal*

Subsequent to issuing a preliminary injunction in favor of the Plaintiff, the Court must determine the amount of the security bond that Plaintiff must post to cover costs and damages in case the defendants are wrongfully enjoined. *See* Fed. R. Civ. P. 65(c); *Ne. Airlines, Inc. v. Nationwide Charters & Conventions, Inc.*, 413 F.2d 335, 338 (1st Cir. 1969). The Court has the discretion to waive this requirement, or to require only a nominal bond. *See Pharm. Soc'y of*

*State of N.Y., Inc. v. N.Y. State Dep't. of Soc. Servs.*, 50 F.3d 1168, 1174-75 (2d Cir. 1995);
*Caterpillar v. Nationwide Equip.*, 877 F. Supp. 611, 617 (M.D. Fla. 1994).

Courts have recognized an exception to the security bond requirement specifically for
"suits to enforce important federal rights or public interests." *Crowley v. Local No. 82,*
*Furniture & Piano Moving*, 679 F.2d 978, 1000 (1st Cir. 1982); *see also Save Our Sonoran, Inc.*
*v. Flowers*, 408 F.3d 1113, 1126 (9th Cir. 2005) (recognizing "long-standing precedent that
requiring nominal bonds is perfectly proper in public interest litigation"); *Cal. ex rel. Van De*
*Kamp v. Tahoe Reg'l Planning Agency*, 766 F.2d 1319, 1325-26 (9th Cir.1985) (nominal bond
appropriate where party cannot afford to post a substantial bond and if imposition of a bond
requirement would serve to prevent judicial review). This is especially true here because the
public interest is served when consumers bring suits to protect their rights against powerful
Fortune 500 corporations.[7]

## D.    *There is Good Cause to Expedite Discovery*

Plaintiff (and the putative class) seek expedited discovery in connection with the preliminary
injunction motion as follows:

    A)    Eight targeted requests for production;[1]

    B)    Five targeted interrogatories;[2] and

    C)    Deposition(s) pursuant to Fed. R. Civ. P. 30(b)(6) related to
          only six topics.[3]

---

[7] *See* http://money.cnn.com/magazines/fortune/fortune500/2007/snapshots/749.html (listing Sears as
Number 38 on Fortune Magazine's "Fortune 500," its annual ranking of America's largest
corporations.

[1] Attached hereto as exhibit B.

[2] Attached hereto as exhibit C.

[3] Attached hereto as exhibit D.

This limited, narrowly-tailored discovery will uncover the basic, readily-quantifiable issues in this litigation: *i.e.*, the extent to which Sears has installed, and still currently installs, dryer vents in a manner that contradicts and violates manufacturer specifications.

In the context of a motion for a preliminary injunction, expedited discovery is warranted in order to provide "a fuller record for the court when deciding whether to issue a preliminary injunction," *Nobel Biocare USA, Inc. v. Lynch*, 1999 WL 958501 *4 (N.D. Ill. September 15, 1999) (*Lindberg, J.*); *see also, Moravek on behalf of FNB Bancorp, Inc. v. FNB Bancorp, Inc.*, 1986 WL 7958 at *4 (N.D. Ill. July 9, 1986) (Defendants' argument amounts to a claim that plaintiffs cannot meet the standards for the grant of a preliminary injunction. This Court will not prejudge that question. Whether plaintiffs have an adequate remedy at law must be determined by the record established through discovery and the preliminary injunction hearing.") (*Rovner, J.*)[4] Otherwise, courts generally require a party seeking expedited discovery to show that the party would be entitled to a preliminary injunction. *See Sheridan v. Oak Street Mortg.*, LLC, 244 F.R.D. 520, 521-2 (E.D. Wis. 2007) (After surveying the law on expedited discovery, concluding that "Sheridan's motion is granted to the extent that he may engage in limited discovery reasonably calculated to lead to the discovery of admissible evidence on the issues of class certification and damages."); *OMG Fidelity, Inc. v. Sirius Technologies, Inc.*, 239 F.R.D. 300, 302-305 (N.D. N.Y. 2006) (survey of law on expedited discovery).

---

[4] *Thomas and Betts Corp. v. Panduit Corp.*, 1995 WL 257872 (N.D. Ill. May 01, 1995) (expedited discovery granted regarding injunction of promotion and sales of steel barbed cable tie)(*Guzman, Magistrate J.*); *Schiff v. Steiger*, 1991 WL 280651 at *4 (N.D. Ill. December 27, 1991) ("the Court agrees that it would be prudent to engage in discovery as quickly as possible thereafter in order to ensure that any materials which likely would not be retained by the parties after their respective events are over are produced and reviewed prior to their destruction.") (*Rovner, J.*).

Therefore, expedited discovery is warranted here because it will give the Court, at a hearing on the instant motion for a preliminary injunction, a more concrete picture of the extent to which Sears has endangered, and continues to endanger, its clothes dryer costomers by installing hazardous dryer vents. Moreover, there is good cause for the expedited discovery because, as shown above, Plaintiff (and the putative class) meet the requirements of a preliminary injunction.

## IV.    CONCLUSION

Wherefore, for the foregoing reasons, Plaintiff respectfully requests that the Court (1) issue a preliminary injunction in the form set forth in the accompanying order; (2) order Sears to respond within 20 days to the expedited discovery requests pursuant to Fed. R. Civ. P. 26, 30, 33, and 34.

FITZPATRICK & FITZPATRICK
WILLIAM FITZPATRICK

_____

FITZPATRICK & FITZPATRICK
WILLIAM FITZPATRICK
36 West Randolph
Suite 301
Chicago, IL 60601
Telephone: 312/553-2200

Local Counsel for Plaintiff and the Class

DAVID P. MEYER & ASSOCIATES CO., LPA
DAVID P. MEYER
MATTHEW R. WILSON
1320 Dublin Road, Suite 100
Columbus, Ohio 43215
Telephone: 614/224-6000
614/224-6066 (fax)

COUGHLIN STOIA GELLER RUDMAN
& ROBBINS LLP
PAUL J. GELLER
STUART A. DAVIDSON

120 East Palmetto Park Road, Suite 500
Boca Raton, Florida 33432
Telephone: 561/750-3000
561/750-3364 (fax)

COUGHLIN STOIA GELLER RUDMAN
& ROBBINS LLP
ROBERT M. ROTHMAN
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

MADDOX HARGETT & CARUSO, P.C.
THOMAS A. HARGETT
10100 Lantern Road, Suite 150
Fishers, Indiana 46038
Telephone: 317/598-2040
317/598-2050 (fax)

Attorneys for Plaintiff and the Class

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

JOVAN JONES, on behalf of herself and all
others similarly situated,

**CASE No. 08 CV 2951**

Plaintiff,

**Judge Leinenweber**

v.

**Magistrate Judge Cox**

SEARS, ROEBUCK, & CO.,

Defendant.

## PLAINTIFF'S FIRST SET OF EXPEDITED
## REQUESTS FOR PRODUCTION TO DEFENDANT SEARS, ROEBUCK & CO.

Pursuant to Fed. R. Civ. P. 34, Plaintiff Jovan Jones ("Plaintiff"), by and through undersigned counsel, hereby demands that Defendant Sears, Roebuck & Co. ("Defendant") produce the documents described below for inspection and copying at the office of Fitzpatrick & Fitzpatrick, 36 West Randolph, Suite 301, Chicago, IL 60601, within the expedited timeframe specified by the Court.

### DEFINITIONS

1.    "Plaintiff" shall mean Plaintiff Jovan Jones.

2.    "Defendant," "Sears," "you," or "your" shall mean Defendant Sears, Roebuck & Co., its present and former officers, directors, shareholders, employees, trustees, principals, agents, servants, parent corporations, subsidiaries, divisions, affiliates, franchisee, associated or related entities, predecessors, successors, accountants, and attorneys; all other persons, corporations and organizations acting on its behalf; and any or all of the foregoing

3.    The term "document" or "documents" is intended to be interpreted in the broadest possible sense and includes, but is not limited to, all electronic data and all communications which

$EXHIBIT$ "B"

are stored or retrievable or recorded in any manner and also includes, without limitation, any writing or other record of information or images, including, but not limited to, print, handwriting, photographs, film, recordings, memoranda, books, records, accounts, ledgers, vouchers, invoices, drafts, bills, charge slips, letters, electronic mail or "e-mail," compact discs, CD-ROM discs, magnetic tape, videotape, magnetic or optical disks, "floppy disks," "PowerPoint" or other presentation software systems, telegrams, mailgrams, correspondence, notes and minutes of meetings, conversations or telephone calls, resolutions, interoffice memoranda, work papers, reports, projects, tabulations, studies, surveys, legal complaints and other pleadings, affidavits, interrogatories, legal briefs, legal motions, judgments, designs, drawings, schematics, maps, manuals, models, notebooks, contracts, agreements, diaries, telephone records, desk calendars, appointment books, circulars, charts, transcripts, news releases, trade releases, advertisements, press books, teletype messages, licenses, financial statements, stenographers' notebooks, punchcards, computer printouts and data, telecopier or facsimile transmissions and printouts, letters of credit, stock certificates and securities. The term "document" also includes preliminary drafts or revisions or copies of any such document if the copy is in any way different from the original, now in your possession, custody or control, or in the possession, custody or control of your advisors, agents, employees, servants, representatives, trustees, counsel or other persons acting or purporting to act on your behalf.

4.      The term "electronic data" refers to any original and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind), of mechanical, facsimile, electronic, magnetic, digital or other programs (whether private, commercial, or work-in-progress), programming notes or instructions, activity listings of electronic mail receipts or transmittals, output resulting from the use

of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail or "e-mail," personal digital assistant ("PDA") messages, instant messenger messages, operating systems, source code of all types, programming languages, linkers and compilers, peripheral drives, PDF files, PRF files, batch files, ASCII files, crosswalks, code keys, pull down tables, logs, file layouts and any and all miscellaneous files or file fragments, regardless of the media on which they reside and regardless of whether said electronic data consists of an active file, deleted file or file fragment.

5.      The term "person" means and refers to natural persons, proprietorships, corporations, partnerships, trusts, joint ventures, groups, associations, organizations, governmental agencies and/or departments.  References to an individual, partnership, or corporation include any and all agents, employees, representatives, and attorneys, and all other persons or entities acting on his, her, or its behalf or under his, her, or its control.

6.      The term "communications" refers to any exchange of information by any means of transmission, including, but not limited to, face-to-face conversations, mail, electronic mail, telegram, overnight delivery, telephone, facsimile or telex.

7.      The term "concerning" means relating to, referring to, regarding, describing, evidencing, or constituting.  Requests for documents "concerning" any subject matter include documents concerning communications regarding that subject matter.

8.      All/Each.  The terms "all" and "each" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

9.     And/Or. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

10.     The term "dryer" shall refer to clothes dryers.

11.     "Heavy Metal Vent" shall refer to a clothes dryer vent that is either rigid sheet metal or corrugated semi-rigid sheet metal material and is exemplified by the pictures in paragraph 26 of Plaintiff's Class Action Complaint.

12.     "Non-Heavy Metal Vent" shall refer to all clothes dryer vents that are not "Heavy Metal Vent," as defined in paragraph 11 above.

13.     "Plaintiff's warning label" shall refer to the warning pictured in paragraph 25 of Plaintiff's Class Action Complaint.

14.     The singular of any term shall include the plural, and the plural of any term shall include the singular.

## INSTRUCTIONS

1.     In responding to these document requests, you shall produce separately all documents available at the time of responding or which can be located or discovered by reasonably diligent efforts, including documents in the possession of his, her, or its agents and representatives.

2.     If you claim any form of privilege or any other objection, whether based on statute, common law, or otherwise, as a ground for not producing any requested document, please furnish a privilege log identifying each document for which the privilege or other objection is claimed together with the following information: date, sender, recipient, persons to whom copies were furnished together with their job titles, subject matter, basis on which

- 4 -

privilege or other objection is claimed, and the paragraph(s) of this request to which such document responds. If you claim privilege or any other objection with regard to only part of a document, produce the part to which there is no objection.

3.    If any document that would otherwise be responsive to these document requests has been lost, stolen, or is for some reason beyond your control or no longer in your possession, please state and specify in detail for each such document: the type of document, the types of information contained therein, the date upon which it ceased to exist, the disposition that was made of it, the identity of all persons having knowledge of the circumstances of its disposition, and the identity of all persons having knowledge of the contents thereof.

4.    In responding to this request for production, produce all documents as kept in the normal course of business and identify the file from which each document was taken. The documents produced must be organized and labeled to correspond with the categories in the request or as permitted under the applicable Rules. This request is continuing in nature and requires you to supplement your production promptly if you obtain additional responsive documents.

5.    In accordance with Fed. R. Civ. P. 34(b), the production of Electronically Stored Information ("ESI") should be in native format linked to single-page tagged image file format ("TIFF"). ESI in TIFF format should be identified by an Opticon cross-reference file. All metadata – data that describes the electronic files, e.g., "date last modified" – associated with ESI shall be produced in text format linked to the associated files. No steps should be taken that would make the production of ESI in this format less convenient or that would increase the costs associated with the production of ESI. In addition, you should avoid taking any steps that would

- 5 -

hinder the Plaintiff's ability to eliminate duplicate documents or files within a custodian's ESI or across multiple custodians (vertical and horizontal de-duplication). No steps should be taken to eliminate duplications, however, without Plaintiff's consent.

## DOCUMENTS TO BE PRODUCED

### REQUEST NO. 1:

All employee training manuals, handbooks, policy statements or other instructions or guides concerning installation of dryers and dryer vents.

### REQUEST NO. 2:

All documents concerning the internal process, operations, or structure of your dryer delivery or installation department or concerning other employees otherwise referred to at http://www.sears.com/shc/s/nb_10153_12605_NB_InstallationRepairs?adCell=AF and in paragraph 12 of Plaintiff's Class Action Complaint.

### REQUEST NO. 3:

All documents evidencing your communications with persons or entities who act as your dryer installers, whether employees or contractors, concerning the policies, procedures and/or care to be taken in installing dryers.

### REQUEST NO. 4:

All documents concerning your efforts to comply with each of the manufacturers' installation warnings, requirements and/or specifications for dryers, including, but not limited to, any follow up procedures, on site inspections, review of installation, job-site documents, or other procedures used by you to ensure installations comply with all manufacturers' warnings, requirements and/or specifications concerning dryer vents.

REQUEST NO. 5:

All documents concerning your efforts to comply with Plaintiff's warning labels.

REQUEST NO. 6:

All documents sufficient to identify each of your dryer installers throughout the country.

REQUEST NO. 7:

All documents establishing that Non-Heavy Metal Vents comply with manufacturer requirements or are acceptable and safe for installation.

REQUEST NO. 8:

All documents related to any customer complaint of an alleged malfunction or fire in connection with a dryer, due to an improper dryer vent or improperly installed dryer vent.

FITZPATRICK & FITZPATRICK
WILLIAM FITZPATRICK

FITZPATRICK & FITZPATRICK
36 West Randolph
Suite 301
Chicago, IL 60601
Telephone: 312/553-2200

Local Counsel for Plaintiff and the Class

DAVID P. MEYER & ASSOCIATES CO., LPA
DAVID P. MEYER
MATTHEW R. WILSON
1320 Dublin Road, Suite 100
Columbus, Ohio 43215
Telephone: 614/224-6000
614/224-6066 (fax)

COUGHLIN STOIA GELLER RUDMAN
 & ROBBINS LLP
PAUL J. GELLER
STUART A. DAVIDSON
120 East Palmetto Park Road, Suite 500
Boca Raton, Florida 33432
Telephone: 561/750-3000
561/750-3364 (fax)

COUGHLIN STOIA GELLER RUDMAN
 & ROBBINS LLP
ROBERT M. ROTHMAN
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

MADDOX HARGETT & CARUSO, P.C.
THOMAS A. HARGETT
10100 Lantern Road, Suite 150
Fishers, Indiana 46038
Telephone: 317/598-2040
317/598-2050 (fax)

Attorneys for Plaintiff and the Class

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

JOVAN JONES, on behalf of herself and all
others similarly situated,

              Plaintiff,

v.

SEARS, ROEBUCK, & CO.,

              Defendant.

**CASE No. 08 CV 2951**

**Judge Leinenweber**

**Magistrate Judge Cox**

## PLAINTIFF'S FIRST SET OF EXPEDITED
## INTERROGATORIES TO DEFENDANT SEARS, ROEBUCK & CO.

Plaintiff Jovan Jones, pursuant to Fed. R. Civ. P. 33, hereby requests that Defendant Sears,

Roebuck & Co. answer the following interrogatories within the expedited time period ordered by the

Court.

### I.    DEFINITIONS

Plaintiff hereby adopts the following uniform definitions and rules of construction for these

interrogatories:

1.    The term "person" or "persons" means and refers to natural persons, proprietorships,

corporations, partnerships, trusts, joint ventures, groups, associations, organizations and

governmental agencies and other agencies.

2.    "Defendant," "Sears" "you," or "your" shall mean Defendant Sears, Roebuck & Co.,

its present and former officers, directors, shareholders, employees, trustees, principals, agents,

servants, parent corporations, subsidiaries, divisions, affiliates, franchisee, associated or related

*EXHIBIT "C"*

entities, predecessors, successors, accountants, and attorneys; all other persons, corporations and organizations acting on its behalf; and any or all of the foregoing.

3.      The term "dryer" shall refer to clothes dryers.

4.      "Heavy Metal Vent" shall refer to a clothes dryer vent that is either rigid sheet metal or corrugated semi-rigid sheet metal material and is exemplified by the pictures in paragraph 26 of Plaintiff's Class Action Complaint.

5.      "Non-Heavy Metal Vent" shall refer to all clothes dryer vents that are not "Heavy Metal Vents," as defined in paragraph 4 above.

6.      The use of the singular form of any word includes the plural and vice versa.

## II.      INSTRUCTIONS

1.      These interrogatories shall be deemed to be continuing, and you are required to supplement your answers based upon any information of which you become aware after you serve initial responses to these interrogatories, in accordance with Fed. R. Civ. P. 26(e).

2.      To the extent any interrogatory is objected to, set forth all reasons therefore. If you claim privilege as a ground for not answering an interrogatory in whole or in part, describe the factual basis for your claim of privilege in sufficient detail so as to permit the Court to adjudicate the validity of the claim, including the privilege claimed and the identity of the persons involved in such communication, if based on attorney-client communication. If you claim attorney-work product, also identify the matter in connection with which the information it contains was obtained and/or prepared. If you object in part to any interrogatory, answer the remainder completely.

3.      If any interrogatory does not apply to you, you must state "not applicable" with respect to such interrogatory and state the factual basis for such contention.

4.      In answering each interrogatory, state whether the information furnished is within the personal knowledge of the person answering and, if not, the name of each person to whom the information is a matter of personal knowledge.

5.      In answering each interrogatory, identify each person who assisted or participated in preparing or supplying any of the information in the answer to or relied on in preparing answers to each interrogatory.

6.      If an interrogatory requests that you identify a person or persons, for each such person state the following:

> (a)      whether the person is and/or has been employed by Sears;
>
> (b)      the date of each person's employment with Sears;
>
> (c)      the nature of any other relationship the person maintains or has maintained with Sears;
>
> (d)      the subject matter or nature of responsive information within the person's knowledge, custody or control;
>
> (e)      the person's current or last known home business addresses; and
>
> (f)      the person's current or last known home and business telephone numbers.

7.      If the answer to all or any part of the interrogatory is not presently known or available, include a statement to that effect, furnish the information now known or otherwise available, and respond to the entire interrogatory by supplemental answer, in writing and under oath, within ten days from the time the entire answer becomes known or available, but in no event less than five days prior to trial.

### III.    INTERROGATORIES

1.      Identify all persons and entities who have installed Heavy Metal Vents and Non-Heavy Metal Vents on behalf of Sears since May 21, 2004.

2.      Identify all persons, since May 21, 2004, who have been or are currently employed in your clothes dryer delivery or installation department(s).

3.      Identify all current or former employees or current or former independent contractors referred to at http://www.sears.com/shc/s/nb_10153_12605_NB_InstallationRepairs?adCell=AF and in paragraph 12 of Plaintiff's Class Action Complaint.

4.      Identify all persons, since May 21, 2004 who have been or are currently employed in your retail clothes dryer department.

5.      Identify all persons or entities who have made any complaints to Sears related to the installation of an alleged improper dryer vent since May 21, 2004, including any lawsuits filed against Sears and/or any of its installers.

DATED:  June __, 2008                 FITZPATRICK & FITZPATRICK
                                      WILLIAM FITZPATRICK


                                      _____
                                      FITZPATRICK & FITZPATRICK
                                      36 West Randolph
                                      Suite 301
                                      Chicago, IL 60601
                                      Telephone:  312/553-2200

                                      Local Counsel for Plaintiff and the Class

                                      DAVID P. MEYER & ASSOCIATES CO., LPA
                                      DAVID P. MEYER

MATTHEW R. WILSON
1320 Dublin Road, Suite 100
Columbus, Ohio 43215
Telephone: 614/224-6000
614/224-6066 (fax)


COUGHLIN STOIA GELLER RUDMAN
& ROBBINS LLP
PAUL J. GELLER
STUART A. DAVIDSON
120 East Palmetto Park Road, Suite 500
Boca Raton, Florida 33432
Telephone: 561/750-3000
561/750-3364 (fax)

COUGHLIN STOIA GELLER RUDMAN
& ROBBINS LLP
ROBERT M. ROTHMAN
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

MADDOX HARGETT & CARUSO, P.C.
THOMAS A. HARGETT
10100 Lantern Road, Suite 150
Fishers, Indiana 46038
Telephone: 317/598-2040
317/598-2050 (fax)


Attorneys for Plaintiff and the Class

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

JOVAN JONES, on behalf of herself and all
others similarly situated,

**CASE No. 08 CV 2951**

Plaintiff,

**Judge Leinenweber**

v.

**Magistrate Judge Cox**

SEARS, ROEBUCK, & CO.,

Defendant.

## NOTICE OF DEPOSITION

To:

**SEARS, ROEBUCK & CO.**

EXHIBIT "D"

**PLEASE TAKE NOTICE THAT**, pursuant to Rules 26 and 30(b)(6) of the Federal Rules of Civil Procedure, undersigned counsel will take the deposition upon oral examination of Defendant Sears, Roebuck, & Co., on _____ _____, 2008, at _____ ____.m. and continuing on consecutive days until completed at _____ on the following matters:

**DEFINITIONS**

1.    "Plaintiff" means Plaintiff Jovan Jones.

2.    "Defendant," "Sears" "you," or "your" shall mean Defendant Sears, Roebuck & Co., its present and former officers, directors, shareholders, employees, trustees, principals, agents, servants, parent corporations, subsidiaries, divisions, affiliates, franchisee, associated or related entities, predecessors, successors, accountants, and attorneys; all other persons, corporations and organizations acting on its behalf; and any or all of the foregoing.

3.    The term "dryer" shall refer to clothes dryers.

4.    "Heavy Metal Vent" shall refer to a clothes dryer vent that is either rigid sheet metal or corrugated semi-rigid sheet metal material and is exemplified by the pictures in paragraph 26 of Plaintiff's Class Action Complaint.

5.    "Non-Heavy Metal Vent" shall refer to all clothes dryer vent that are not "Heavy Metal Vents," as defined in paragraph 4 above.

6.    The singular of any term shall include the plural, and the plural of any term shall include the singular.

## DEPOSITION TOPICS

1.    Your inventory of Heavy Metal Vents and Non-Heavy Metal Vents since May 21, 2004.

- 1 -

2.     Your training of employees or independent contractors regarding clothes dryer warning labels and in particular, Plaintiff's warning label.

3.     The internal process, operations, or structure of your dryer delivery or installation department or concerning other employees or independent contractors otherwise referred to at http://www.sears.com/shc/s/nb_10153_12605_NB_InstallationRepairs?adCell=AF and in paragraph 12 of Plaintiff's Class Action Complaint.

4.     Your efforts to comply with each of the manufacturers' installation warnings, requirements and/or specifications for dryers, including, but not limited to, any follow up procedures, on site inspections, review of installation, job-site documents, or other procedures used by you to ensure installations comply with all manufacturers' warnings, requirements and/or specifications concerning dryer vents.

5.     Your knowledge of any dangers or defects with clothes dryers or clothes dryer vents and efforts to communicate those dangers or defects to consumers.

6.     Whether Sears and/or its installers currently install dryer vents that do not comply with manufacturer requirements.

Pursuant to Rule 30(b)(6), please designate one or more officers, directors, managing agents or other persons who will testify on Defendant's behalf and the matters on which they will testify.

> FITZPATRICK & FITZPATRICK
> WILLIAM FITZPATRICK
>
> _____
>
> FITZPATRICK & FITZPATRICK
> 36 West Randolph

Suite 301
Chicago, IL 60601
Telephone: 312/553-2200
Local Counsel for Plaintiff and the Class

DAVID P. MEYER & ASSOCIATES CO., LPA
DAVID P. MEYER
MATTHEW R. WILSON
1320 Dublin Road, Suite 100
Columbus, Ohio 43215
Telephone: 614/224-6000
614/224-6066 (fax)

COUGHLIN STOIA GELLER RUDMAN
  & ROBBINS LLP
PAUL J. GELLER
STUART A. DAVIDSON
120 East Palmetto Park Road, Suite 500
Boca Raton, Florida 33432
Telephone: 561/750-3000
561/750-3364 (fax)

COUGHLIN STOIA GELLER RUDMAN
  & ROBBINS LLP
ROBERT M. ROTHMAN
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

MADDOX HARGETT & CARUSO, P.C.
THOMAS A. HARGETT
10100 Lantern Road, Suite 150
Fishers, Indiana 46038
Telephone: 317/598-2040
317/598-2050 (fax)

Attorneys for Plaintiff and the Class