## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOVAN JONES, Individually and on Behalf of Herself and All Others Similarly Situated,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　vs.<br><br>SEARS, ROEBUCK & CO.,<br><br>　　　　　　　　　　Defendant. | Case No. 08-C-2951<br><br>**PLAINTIFF'S RESPONSE AND INCORPORATED MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |

Pursuant to Fed. R. Civ. P. 12 and LRs 5.3 and 7.1, Plaintiff Jovan Jones ("Plaintiff") respectfully submits the following response in opposition to the Motion to Dismiss, [D.E.s 13, 14], filed by Defendant Sears, Roebuck & Co., ("Defendant" or "Sears"), and, in support, states:

## I.　INTRODUCTION

### A.　Facts Alleged In The Complaint

This case is about improper dryer vent installation that ignored this ***explicit***[1] warning:



---

[1]　Emphasis is added and citations are omitted unless otherwise noted.

Plaintiff, on behalf of a class of similarly situated individuals, alleges that Defendant has breached and continues to breach dryer vent installation contracts by failing to follow that warning, Compl., ¶¶1-17, the result of which, as is self-evident, ***can cause death or fire***, *id.* at p.1. Plaintiff has asserted causes of action arising out of the breached installation contract, Compl., ¶¶48-64 (Breach of Contract (Count I)/Specific Performance (Count II)), alternative equitable claims, *id.*, ¶¶65-81 (Unjust Enrichment (Count III)/Money Had and Received (Count IV)), and an injunctive relief claim based on the attendant danger arising out of the breached contract, *id.*, ¶¶82-89.

**B.      Defendant's Motion to Dismiss**

Defendant has moved to dismiss all the counts based on two principal arguments. The first argument is that Plaintiff does not have any injury and, thus, does not state a claim for breach of contract, Def.'s Mot. at pp. 4-6, or have standing to seek injunctive relief. Def.'s Mot. at pp. 4-6, 7. Defendant also contends that Plaintiff does not state cognizable alternative, equitable causes of action. Def.'s Mot. at pp. 6-7.

**C.      Recent, Dispositive Authority**

In one of several "improper dryer vent installation" cases pending in Federal Courts throughout the Country that pleads facts nearly identical to the facts pled in the instant case, United States District Chief Judge for the Southern District of Indiana David F. Hamilton entered an order denying the plaintiffs' motion for a preliminary injunction, but also held:

> [P]laintiffs Ryan and Amanda Mack ***showed a reasonably likelihood of success on the merits of their breach of contract claim***, based on the theory that defendants hhgregg, Inc. and Gregg Appliances, Inc. ***failed to install the dryer they purchased according to*** the manufacturer's specifications and warnings concerning the material used for the dryer vent.

*Mack v. hhgregg*, No. 1:08-cv-0664-DFH-WTL (S.D. Ind. Aug. 21, 2008), attached hereto as Exhibit A; *see generally Mack* Am. Compl., attached hereto as Exhibit B.

Chief Judge Hamilton's decision clearly demonstrates that Plaintiff has, in the instant case, pled facts sufficient to defeat Defendant's motion to dismiss.

Nevertheless, separate and apart from Chief Judge Hamilton's Order, Defendant's arguments are without merit and are addressed in turn below.

## II.    STANDARD OF REVIEW

Judge Darrah has recently and comprehensively articulated the proper standard of review for a motion to dismiss as follows:

> A motion to dismiss the complaint for failure to state a claim upon which relief may be granted involves two considerations. First, under the notice pleading requirement, this Court must determine whether the Complaint sufficiently provides the Defendants with fair notice of what the . . . claim is and the grounds upon which it rests. Federal rules follow a notice pleading, as opposed to a fact pleading, requirement. The pleading of extensive specific facts is not required, and the complaint need only state a legal claim and provide some indication of time and place. Second, the complaint's allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.
>
> *                *                *
>
> When considering a motion to dismiss, this Court takes the allegations in the Complaint as true, viewing all facts, as well as any inferences reasonably drawn therefrom, in a light most favorable to the Plaintiff. The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits. So long as a well-pleaded complaint sufficiently states a valid claim, even if the likelihood of recovery is very remote, a motion to dismiss the complaint must be denied. However, the factual allegations must be sufficient to raise a right to relief above the speculation level. This Court is not bound to accept as true legal conclusions couched as factual allegations or presume facts not alleged. Furthermore, if a plaintiff pleads facts that demonstrate that he has no claim, he may plead himself out of court.

*Young v. Monahan*, No. 07 C 1193, 2008 WL 182244, at *1 (N.D. Ill. Jan. 16, 2008) (Darrah, J.).

As is set forth below, Plaintiff's Complaint clearly meets that pleading threshold.

## III.    ARGUMENT

### A.    Defendant Misunderstands the Simplicity of this Breach of Installation Contract Case

The Complaint in this case alleges, ***unequivocally***, that:

(a)    Plaintiff paid $49 for Defendant to install a clothes dryer vent, Compl., ¶¶18, 48-64,

(b)    Defendant breached that contract because it did not install a dryer vent properly, *id.* and,

(c)    Plaintiff is damaged because the installation is improper and, more particularly, is one that can "cause death or fire." *Id.*

The allegations in the Complaint, as well as all favorable inferences therefrom, state a claim for breach of contract under any state law.  Defendant has no legal support for an argument to the contrary.  What Defendant instead argues is that Plaintiff has "no injury" in terms of a fire or in terms of a voided warranty.  Def.'s Mot. at pp. 4-6.

Defendant's "no injury" argument relies on a fundamental misunderstanding of this case. Plaintiff's breach of contract claim does not depend on any physical harm or property damage. Nor does the claim depend on any particular product, product line, manufacturer, or voided warranty.  Rather, ***Plaintiff's breach of contract claim—and concomitant injury and Article III standing—is triggered because Defendant did not properly install her dryer***.

It is that simple.

Defendant's breach of contract and Plaintiff's injury-in-fact would have been triggered had Defendant or any other "Joe Installer" installed an asbestos-filled vent, a Styrofoam vent, a paper vent, or any other purported "vent" that is not in compliance with the manufacturer's venting specifications, or for that matter, had Defendant or any other "Joe Installer" installed a vent the wrong way, like by taping a vent to the side of the dryer and leaving the dryer's exhaust hole open.

Put simply, *physical* injury to Plaintiff, *damage* to Plaintiff's property, or any voided dryer warranty[2] are *not elements* of the breach of installation contract claim and are *not* required for Article III standing.  It just so happens that because Defendant breached Plaintiff and the putative classes' contracts by installing a metal foil vent, Defendant created a fire hazard, which the manufacturers warn *can cause fire or death* (thus justifying the preliminary injunctive relief Plaintiff seeks).  Defendant still would have breached the installation contract and Plaintiff and the putative class would still have a *contractual injury* even if the installation of a metal foil vent *would not* cause fire or death precisely because *installation of a metal foil vent is improper*.

To repeat: the injury—and Plaintiff's standing—lies in the contract, which is the fact that Defendant breached the installation contract by not properly installing a dryer vent.  As a result of Defendant's breach, Plaintiff did not receive that for which she paid and bargained, *i.e.*, a dryer installed in a manner consistent with the manufacturers' requirements, but instead, she and the putative class have received a fire hazard.

Defendant, however, cites to a string of inapt product liability cases where plaintiffs sued manufacturers and in which, moreover, there was no privity of contract:

- *O'Neil v. Simplicity, Inc.*, 553 F. Supp. 2d 1110 (D. Minn. 2008) (grandparents owned non-defective crib);

- *Verb v. Motorola, Inc*., 672 N.E.2d 1287 (Ill. App. Ct. 1996) (suit alleging cell phones were defective);

- *Tietsworth v. Harley-Davidson, Inc*., 677 N.W.2d 233 (Wisc. 2004) (motorcycle engines);  and

---

[2]     *See Egilman v. Keller & Heckman, LLP.*, 401 F. Supp. 2d 105, 110 (D.D.C. 2005) ("Factual allegations in briefs or memoranda of law may likewise not be considered, particularly when the facts they contain contradict those alleged in the complaint."); *Johnson Controls, Inc. v. Exide Corp.*, 132 F. Supp. 2d 654, 657 n.6  (N.D. Ill. 2001) ("Cases . . . bar the consideration for Rule 12(b)(6) purposes of assertions made only in such memoranda rather than in the Complaint itself.").

- *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012 (7th Cir. 2002) (automobile tires).

Def.'s Mot. at p.5.

The lack of injury in the cases Defendant cites stems directly from the fact that the plaintiffs had **no contractual relationship** with the respective manufacturers. Put differently, Defendant's line of cases stands for the unexceptional proposition that just because you own a product, in a line of products where some defects have been found, you are not entitled to sue merely because you own a non-defective product in that line.[3]

In fact, in the *Bridgestone/Firestone* case Defendant cites, Judge Easterbrook explained **exactly why** the sort of contractual remedy Plaintiff seeks **is appropriate** in the American system of jurisprudence:

> Consider an example.  Defendant sells 1,000 widgets for $10,000 apiece.  If 1% of the widgets fail as the result of an avoidable defect, and each injury creates a

---

[3]      *Compare*, *e.g.*, *Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 296 (4th Cir. 1989) ("We therefore hold that the district court erred by dismissing the claims of those named plaintiffs who alleged that they first encountered substantial difficulties with their diesel-equipped GM cars only after the purported expiration of all express and implied warranties."); *Payne v. Fujifilm U.S.A., Inc.*, No. 07-385(JAG), 2007 WL 4591281, at *10-*11 (D.N.J. Dec. 28, 2007) (denying motion to dismiss class action for breach of contract for sale of defective cameras); *Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 630 (M.D.N.C. 2006) (denying motion to dismiss class complaint and finding, "it is clear that John Bussian, the named Plaintiff, has sufficiently alleged injury-in-fact in that he alleged that after being informed that his ball joints needed immediate replacement by his mechanic, he replaced his ball joints in his 1998 Durango at a cost of $700 in 2003."); *Coley v. Champion Home Builders Co.*, 590 S.E.2d 20, 22 (N.C. Ct. App. 2004) ("In their complaint, plaintiffs allege they should be awarded 'the costs that they have incurred to purchase and install the defective soil anchor/tie down system or . . . the costs [to] retro-fit their tie-down system to one that provides a safe and reliable method to secure the homes in severe weather conditions and meets the minimal governmental *s*tandards.' When viewed in the light most favorable to plaintiffs, this is a sufficient allegation of actual injury . . ."); *Hinchliffe v. Am. Motors Corp.*, 440 A.2d 810, 816-17 (Conn. 1981) ("Their testimony, if fully credited, indicated that what was advertised as Quadra-Trac four-wheel drive, was actually something less desirable than full-time four-wheel drive. The trier could infer that the presence of the advertised feature added some value to the vehicle because 'Quadra-Trac' was listed on the price sticker as an accessory item included in the vehicle's total price.").

loss of $50,000, then the group will experience 10 failures, and the injured buyers will be entitled to $500,000 in tort damages. That is full compensation for the entire loss; a manufacturer should not spend more than $500,000 to make the widgets safer. Suppose, however, that uninjured buyers could collect damages on the theory that the risk of failure made each widget less valuable; had they known of the risk of injury, these buyers contend, they would have paid only $9,500 per widget-for the expected per-widget cost of injury is $500, and each buyer could have used the difference in price to purchase insurance (or to self-insure, bearing the risk in exchange for the lower price). On this theory the 990 uninjured buyers would collect a total of $495,000. The manufacturer's full outlay of $995,000 ($500,000 to the 10 injured buyers + $495,000 to the 990 uninjured buyers) would be nearly double the total loss created by the product's defect. This would both overcompensate buyers as a class and induce manufacturers to spend inefficiently much to reduce the risks of defects. A consistent system-$500 in damages to every buyer, or $50,000 in damages to every injured buyer-creates both the right compensation and the right incentives. A mixed system overcompensates buyers and leads to excess precautions.

*In re Bridgestone/Firestone, Inc*., 288 F.3d at 1017 n.1.

In very simple terms, Judge Easterbrook thus sets forth a cogent policy rationale for: 1) allowing Plaintiff and the putative class to sue on a ***simple breach of contract theory*** arising from Defendant's improper dryer vent installations, and 2) to recover the benefit of the bargain, *i.e*., damages sufficient to cover proper installation.

Another distinguishing factor from the line of product liability cases Defendant cites is Congressional oversight. In a ***defective product*** case against a ***product manufacturer***, the mechanism for protecting the public does not lie in the lawsuit itself, but instead lies in a federal product recall under the Consumer Product Safety Act ("CPSA"), 15 U.S.C. §§2051-2084, or, more adversely, in an action by the Consumer Product Safety Commission ("CPSC") pursuant to 15 U.S.C. §2061 for a violation of 15 U.S.C. §2064. In the *Simplicity* case that Defendant relies on, for example, injunctive relief was not possible because the product had already been recalled. *Simplicity*, 553 F. Supp. 2d at 1111-12; s*ee also Zepik v. Tidewater Midwest, Inc*., 856 F.2d 936, 945 (7th Cir. 1988) ("the CPSA does not provide a private cause of action for failure to report

knowledge of defects . . .") *Cf. In re Bridgestone/Firestone, Inc.*, 288 F.3d at 1014 ("Firestone recalled and replaced some of those tires.").

That exact principle also came into play in the *Verb* case on which Defendant relies.  In *Verb*, the plaintiffs sued cellular telephone manufacturers for a specific design of a cellular telephone . . . [that] may cause an increase in health risks . . ." *Verb*, 672 N.E.2d at 1289.  The court undertook an exhaustive preemption analysis and ultimately concluded, "We therefore find that the trial court properly ruled that plaintiffs' claims were preempted by the FDA." *Verb*, 672 N.E.2d at 1291-94.[4]

The instant case is entirely different and not under the guise of the CPSA or Congress.  Defendant does not manufacturer dryer vents, nor is Plaintiff's claim based out of an improper or defective manufacture of dryers or dryer vents.  There is no product to be recalled, and although the Congress loudly proclaims in 15 U.S.C. §2051 that "an unacceptable number of consumer products which present unreasonable risks of injury are distributed in commerce . . . [and] the public should be protected against unreasonable risks of injury associated with consumer products," any action by the CPSC against Defendant should be dismissed for want of jurisdiction.

---

[4]      *Cf. Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 530-31 (1992) ("The 1965 [federal cigarette labeling] Act did not pre-empt state law damages actions; the 1969 Act pre-empts petitioner's claims based on a failure to warn and the neutralization of federally mandated warnings to the extent that those claims rely on omissions or inclusions in respondents' advertising or promotions; the 1969 Act does not pre-empt petitioner's claims based on express warranty, intentional fraud and misrepresentation, or conspiracy."); *Wood v. Gen. Motors Corp.*, 865 F.2d 395, 412 (1st Cir. 1988) ("Congress thus intended that all of the [federal motor vehicle safety laws] be uniform national standards. A state *regulation* requiring [airbags or some other type of passive restraint] would be expressly preempted because it would destroy the uniformity of the federal standard, and exceed [federal law's] prescribed role for state regulation.") (italics in the original).

Stated differently, dismantling Defendant's flawed standing and "no injury" argument illuminates precisely why the injunctive relief sought from this Court is so important. Thousands of Defendant's customers have fire hazards as a result of breached dryer vent installation contracts and there is no CPSA relief in terms of a product recall or an action by the CPSC. The only relief for the class members who have had (and who will continue to have) their dryer vent installation contracts breached *is this very lawsuit*.

For that reason, this is precisely the type of public interest case for which preliminary injunctive relief is required. *See*, *e.g.*, *Brogdon v. Nat'l Healthcare Corp.*, 103 F. Supp. 2d 1322, 1337 (N.D. Ga. 2000) ("Plaintiffs' Complaint alleges conduct that continues to pose a serious threat to the health and welfare of Plaintiffs."); *Shaw v. Toshiba Am. Info. Sys., Inc*., 91 F. Supp. 2d 926, 937-38 (E.D. Tex. 1999) (past purchasers had standing); *Dasrath v. Cont'l Airlines*, Inc., 228 F. Supp. 2d 531, 544-45 (D.N.J. 2002) (consumers had standing to enjoin future conduct of airline). Put simply, Plaintiff has an injury in-fact, *i.e.*, her breached installation contract, and, as a result of being a class representative, has the fiduciary responsibility to ask the Court to order Defendant to notify others of its breach and to cease dangerous, improper dryer vent installations.

### B.    Plaintiff Properly Pleads Alternative, Equitable Claims

Defendant also argues for dismissal of Plaintiff's equitable claims for Unjust Enrichment and Money Had and Received because Plaintiff has alleged the existence of a contract. Def.'s Mot. at pp. 6-7.

That argument renders Defendant's above-referenced attack on Plaintiff's contractual claims disingenuous because **now** Defendant claims that Plaintiff **has properly stated a contractual claim**. More importantly, both of the equitable claims are "pled in the alternative of all contract-based causes of action." Compl., ¶¶66, 76. Federal Rules of Civil Procedure 8(d)(2)

and (3) explicitly permit Plaintiff's equitable counts.[5]  *See Olympia Hotels Corp. v. Johnson Wax Dev. Corp.*, 908 F.2d 1363, 1371 (7th Cir. 1990) ("Common law pleading was superseded long ago, however—in the federal courts by the Federal Rules of Civil Procedure, which expressly abolish election of remedies."); *Alper v. Altheimer & Gray*, 257 F.3d 680, 688 (7th Cir. 2001) ("[the party] is entitled to plead in the alternative, even if the pleadings are inconsistent."); *In re Motor Fuel Temperature Sales Practices Litig.*, 534 F. Supp. 2d 1214, 1235-36 (D. Kan. 2008) ("[I]n the absence of an express written contract, whether the parties had an express agreement covering the subject matter is question of fact.  At this stage in the proceedings,  plaintiffs may plead inconsistent claims for relief."); *Blue Frog Mobile NV Inc. v. Navicomm LLC*,  No. 1:06-CV-1215-JDT-TAB, 2007 WL 3334793, at *2 n.3 (S.D. Ind. Nov. 8, 2007) ("It is also worth noting that at the pleading stage, Blue Frog would have been free to plead both a breach of contract theory and, in the alternative, an unjust enrichment theory."); *QuikPac, Inc. v. Reynolds-Freeborn Co.*,  No. 1:03CV0266-JDT-WTL, 2005 WL 1939996, at *5 (S.D. Ind. July 18, 2005) ("Global Mail also argues that since Freeborn is alleging that a valid contract exists between Freeborn and Global Mail, Freeborn may not plead unjust enrichment on the same subject matter alleged in the contract. ***This argument is without merit.*** Although Freeborn alleges the two

---

[5]      Rules 8(d)(2) and (3) provide, respectively:

**(2) Alternative Statements of a Claim or Defense**.

A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.

**(3) Inconsistent Claims or Defenses.**

A party may state as many separate claims or defenses as it has, regardless of consistency.

counts against Global Mail are not based on the same subject matter, it is well-settled that pleading in the alternative is acceptable, even if the pleadings are inconsistent."); *Duncan v. Paragon Publ'g*, *Inc.*, No. IP 01-0505-C-T/G, 2001 WL 1388009, at *3 (S.D. Ind. Sept. 6, 2001) ("Plaintiffs are allowed to plead inconsistent theories, in this case damages for unjust enrichment and breach of contract").

Thus, the four corners of Plaintiff's Complaint allege that Defendant breached the installation contract in such a manner that equity should not have allowed Defendant to collect a fee for that installation, *i.e.*, Defendant knew that its installation violated the dryer manufacturer's clear mandate and that doing so was dangerous. Compl., ¶¶7-17, 23-36.  Those allegations are sufficient to state Plaintiff's equitable claims.  *Indianapolis Raceway Park, Inc. v. Curtiss*, 386 N.E. 2d 724, 726-27 (Ind. Ct. App. 1979) ("'where there is a wrong, the court will find a remedy'"); *Lawson v. First Union Mortgage Co.*, 786 N.E.2d 279, 283-84 (Ind. Ct. App. 2003) ("An action for money had and received is an equitable remedy that lies in favor of one person against another, when that other person has received money either from the plaintiff himself or third persons, under such circumstances that in equity and good conscience he ought not to retain the same, and which money . . . belongs to the plaintiff, and where money has been received by mistake of facts or without consideration, or upon a consideration that has failed, it may be recovered back."); *Bright v. Kuehl*, 650 N.E.2d 311, 316 (Ind. Ct. App. 1995) ("To prevail on a claim for unjust enrichment, a plaintiff must establish that a measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust."). [6]

---

[6]     Defendant presumes that substantive Indiana law applies, Def.'s Mot. at pp. 3-4, and, thus, Plaintiff assumes *arguendo* that it does.  Not until after discovery and briefing will the

## IV.     CONCLUSION

WHEREFORE, based on the foregoing, this Court should deny Defendant's Motion to Dismiss in its entirety.

DATED:  August 28, 2008                    **COUGHLIN STOIA GELLER RUDMAN
                                             & ROBBINS LLP**

                                             s/Cullin A. O'Brien
                                             Cullin A. O'Brien

                                             PAUL J. GELLER
                                             STUART A. DAVIDSON
                                             CULLIN A. O'BRIEN
                                             120 East Palmetto Park Road, Suite 500
                                             Boca Raton, Florida 33432
                                             Telephone: 561/750-3000
                                             561/750-3364 (fax)

                                             DAVID P. MEYER & ASSOCIATES CO., LPA
                                             MATTHEW R. WILSON
                                             1320 Dublin Road, Suite 100
                                             Columbus, Ohio 43215
                                             Telephone: 614/224-6000
                                             614/224-6066 (fax)

                                             Lead Counsel for Plaintiff and the Class

                                             FITZPATRICK & FITZPATRICK
                                             WILLIAM F. FITZPATRICK
                                             36 West Randolph, Suite 301
                                             Chicago, IL  60601
                                             Telephone:  312/553-2200

                                             Local Counsel for Plaintiff and the Class

---

choice of law question be answered. *See*, *e.g*., Compl., ¶19 (Defendant is incorporated in New York state with a principle place of business in Illinois).

MADDOX HARGETT & CARUSO
THOMAS A. HARGETT
THOMAS K. CALDWELL
THOMAS J. KIRK
10100 Lantern Road, Suite 150
Fishers, Indiana 46038
Telephone: 317/598-2040
317/598-2050 (fax)

COUGHLIN STOIA GELLER RUDMAN
 & ROBBINS LLP
ROBERT M. ROTHMAN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

Attorneys for Plaintiff and the Class

## CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2008, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-

mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I

have mailed the foregoing document or paper via the United States Postal Service to the non-

CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.  Executed on August 28, 2008.

s/ Cullin A. O'Brien
CULLIN A. O'BRIEN

COUGHLIN STOIA GELLER RUDMAN
 & ROBBINS LLP
E-mail:cobrien@csgrr.com

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOVAN JONES, Individually and on Behalf of<br>Herself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>SEARS, ROEBUCK & CO.,<br><br>Defendant. | ) Case No. 08-C-2951<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## LIST OF EXHIBITS TO PLAINTIFF'S RESPONSE AND INCORPORATED MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Exhibit A          Entry on Motion for Preliminary Injunction in
                   *Mack v. hhgregg*, No. 1:08-cv-0664-DFH-WTL (S.D. Ind. Aug. 21, 2008)

Exhibit B          First Amended Class Action Complaint in
                   *Mack v. hhgregg*, No. 1:08-cv-0664-DFH-WTL (S.D. Ind. Aug. 21, 2008)

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| RYAN and AMANDA MACK, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CASE NO. 1:08-cv-0664-DFH-WTL |
| HH GREGG, INC. and GREGG APPLIANCES, INC., d/b/a HH GREGG, | ) ) ) | |
| Defendants. | ) ) | |

ENTRY ON MOTION FOR PRELIMINARY INJUNCTION

The court considered evidence and argument on plaintiffs' motion for preliminary injunction on August 21, 2008. At the conclusion of the hearing, the court denied the motion for reasons stated on the record. The court briefly summarizes those reasons here, though in the interests of time, the court intends for the transcript of its oral findings and conclusions to comply with the requirements of Rules 52 and 65 of the Federal Rules of Civil Procedure.

First, plaintiffs Ryan and Amanda Mack showed a reasonably likelihood of success on the merits of their breach of contract claim, based on the theory that defendants hhgregg, Inc. and Gregg Appliances, Inc. failed to install the dryer they purchased according to the manufacturer's specifications and warnings

concerning the material used for the dryer vent.  Plaintiffs did not show a
likelihood of success on the merits of any other claims.

Second, plaintiffs failed to show that they face an imminent threat of
irreparable harm for which there is no adequate remedy at law.  Plaintiffs could
avoid any alleged risk by spending less than the federal civil filing fee to replace
the existing vent and could then obtain adequate relief at law by a modest award
of damages.

Third, plaintiffs' request for an injunction ordering defendants to stop
installing dryers with flexible metal foil vents fails for two reasons.  Defendants
changed their practices and stopped installing metal foil vents more than a year
before this lawsuit was even filed.  In light of this voluntary change of course by
defendants themselves, plaintiffs have not shown a reasonable prospect that
defendants will return to its earlier practices.  The court sees no need for this form
of injunctive relief.  See generally *United States v. W.T. Grant Co.*, 345 U.S. 629,
633 (1953) (affirming denial of injunctive relief based on possibility that defendant
might return to prior practices:  "the moving party must satisfy the court that
relief is needed.  The necessary determination is that there exists some cognizable
danger of recurrent violation, something more than the mere possibility which
serves to keep the case alive.").  In addition, this form of injunctive relief would not
actually benefit the named plaintiffs, and no class has been certified at this point,
as discussed below.

Fourth, plaintiffs' request for an injunction ordering defendants to identify customers who had dryers installed with metal foil vents and to send them notices of potential risks is not moot but fails for two different reasons.  Plaintiffs did not present actual, admissible evidence that metal foil vents actually cause fires.  Perhaps they will present such evidence in the future, but they have not done so yet.  In addition, the Macks do not presently have standing to seek a notice to other customers because such relief will not benefit them.  Because no plaintiff class has been certified at this point, "plaintiffs lack standing to seek – and the district court therefore lacks authority to grant – relief that benefits third parties." *McKenzie v. City of Chicago*, 118 F.3d 552, 555 (7th Cir. 1997) (reversing grant of injunctive relief that did not benefit named plaintiff where plaintiff class had not been certified).  "A wrong done to plaintiff in the past does not authorize prospective, class-wide relief unless a class has been certified.  Why else bother with class actions?"  *Id.*, citing *Los Angeles v. Lyons*, 461 U.S. 95 (1983). Plaintiffs' equitable arguments to the effect that such an injunction is needed to protect the safety of persons who fall within the definition of the proposed class do not overcome this basic restriction on the power of courts to make the world a better place.

Accordingly, the court denied plaintiffs' motion for preliminary injunction.

Date: August 21, 2008

DAVID F. HAMILTON, CHIEF JUDGE
United States District Court
Southern District of Indiana

-3-

Copies to:

Thomas K. Caldwell
MADDOX HARGETT & CARUSO, PC
tkcaldwell@mhclaw.com

Sonia Chanda Das
LEWIS & WAGNER
sdas@lewiswagner.com

Stuart A. Davidson
COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
sdavidson@csgrr.com

Anthony Marino Eleftheri
LEWIS WAGNER LLP
eleftheri@lewiswagner.com

Paul Jeffrey Geller
COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
pgeller@csgrr.com

Thomas A. Hargett
MADDOX HARGETT & CARUSO, PC
tahargett@mhclaw.com

Timothy John Kirk
MADDOX HARGETT & CARUSO, PC
kirktjohn@mhclaw.com

David P. Meyer
DAVID P. MEYER & ASSOCIATES CO., LPA
dmeyer@dmlaws.com

Cullin A. O'Brien
COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
cobrien@csgrr.com

Stephen J. Peters
HARRISON & MOBERLY
speters@h-mlaw.com

Kameelah Shaheed-Diallo
LEWIS WAGNER LLP
kshaheed-diallo@lewiswagner.com

John Carl Trimble
LEWIS WAGNER LLP
jtrimble@lewiswagner.com

Matthew Ryan Wilson
DAVID P. MEYER & ASSOCIATES
mwilson@dmlaws.com

**Nyla Libhart**

| | |
|---|---|
| **From:** | insd_cmecf@insd.uscourts.gov |
| **Sent:** | Friday, August 22, 2008 10:29 AM |
| **To:** | e-filer@insd.uscourts.gov |
| **Subject:** | Activity in Case 1:08-cv-00664-DFH-JMS MACK et al v. HH GREGG, INC. Entry |

<span style="color:red">**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**</span>
**\*\*\*NOTICE\*\*\* There is no charge for viewing opinions.**

**U.S. District Court**
**Southern District of Indiana**
**Office of the Clerk**
**(317)229-3700**
www.insd.uscourts.gov

**Notice of Electronic Filing**

The following transaction was entered on 8/22/2008 at 10:28 AM EDT and filed on 8/21/2008 .
**Case Name:**          MACK et al v. HH GREGG, INC.
**Case Number:**     1:08-cv-664
**Filer:**
**Document Number:** 64

**Docket Text:**
**ENTRY denying plaintiffs' motion for preliminary injunction. Signed by Judge David Frank Hamilton on 8/21/2008.(LBK)**

**1:08-cv-664 Notice has been electronically mailed to:**

Thomas K. Caldwell tkcaldwell@mhclaw.com

John Carl Trimble jtrimble@lewiswagner.com, jjohnson@lewiswagner.com

Stephen J. Peters speters@h-mlaw.com, acooper@h-mlaw.com

Thomas A. Hargett thargett@mhclaw.com

Sonia Chanda Das sdas@lewiswagner.com

Anthony Marino Eleftheri eleftheri@lewiswagner.com

David P. Meyer dmeyer@dmlaws.com, shelly@dmlaws.com

Matthew Ryan Wilson mwilson@dmlaws.com, sceli@dmlaws.com

Timothy John Kirk kirktjohn@mhclaw.com

Kameelah Shaheed-Diallo kshaheed-diallo@lewiswagner.com, kshaheed@gmail.com

Cullin A. O'Brien cobrien@csgrr.com, e_file_fl@csgrr.com

Paul Jeffrey Geller pgeller@csgrr.com, e_file_fl@csgrr.com

Stuart A. Davidson sdavidson@csgrr.com, e_file_fl@csgrr.com

**1:08-cv-664 Notice has not been electronically mailed to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP insdStamp_ID=989432984 [Date=8/22/2008] [FileNumber=1639599-0]
[67115fb570e6b2429f00e5bc07ca7c0f9709e15e36cf78132c17c2e2f1de6cd3b6145
bb95e6584141f3516eb46f7bf47d4418d3d5f4ce05a6935d8b6727e5f19]]

# EXHIBIT B

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF INDIANA

RYAN and AMANDA MACK, Individually )
and on Behalf of All Others Similarly Situated, )
                                 )
               Plaintiffs, )
                                 )
           vs. )
                                   )
HHGREGG, INC. and GREGG )
APPLIANCES, INC., d/b/a HHGREGG )
               )
           Defendants. )
                                   )

Case No: 1:08-cv-0664-DFH-WTL

**FIRST AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiffs Ryan and Amanda Mack ("Plaintiffs"), individually and on behalf of all others similarly situated, hereby sue hhgregg, Inc. and Gregg Appliances, Inc., d/b/a hhgregg (collectively "hhgregg" or Defendants) and state as follows:

## INTRODUCTION



1.      On its website, hhgregg holds its installation and delivery services out as "deluxe" and "professional."  *See* http://www.hhgregg.com/deliveryCharges.asp ("deluxe delivery").  In addition, the popup box that displays when a customer clicks on the website's hyperlink under "delivery" for product pages for clothes dryers states: "Home delivery is handled exclusively by hhgregg's in-house Professional Delivery Teams and our own fleet of delivery trucks."

2.      Based on, among other things, hhgregg's assurances, thousands of people nationwide contracted with hhgregg to install clothes dryers (the "Dryers") in their homes and businesses.

3.      The Dryers themselves and/or the installation manuals for the Dryers contain a **WARNING** sign regarding the installation of vents, a sample of which appears above.

4.      The manufactures require the installation of a heavy metal vent.  There are two types of heavy metal vents: (1) rigid metal; and (2) flexible (also known as semi-rigid) metal.  The manufactures do not permit metal foil.

5.      Despite the fact that the **WARNING** on the Dryer and/or in the manual is straightforward, concise, and clearly states the specific materials that must be used during the installation of a clothes dryer, hhgregg's installers – the self-styled professionals – often blatantly ignore the **WARNING**.  Specifically, rather than following the simple directions, the Defendants – the self-proclaimed "experts" – installed the Dryers without the vents mandated by the manufacturers.

6.      hhgregg's installers failed to follow the **WARNING**, thus breaching the manufacturers' warranties on the Dryers and creating dangerous conditions that can result in death or fire.

## FACTUAL BACKGROUND

7.      Plaintiffs bring this action individually and on behalf of a class defined as follows: All persons who purchased a Dryer from hhgregg, who entered into a contract with hhgregg to install the Dryer, and whose Dryer was installed pursuant to that agreement with a vent that was not in accordance with the manufacturer's requirements (the "Class").

8.      All of the claims asserted herein arise out of hhgregg's failure to properly install the Dryers in contravention of the clear and explicit installation **WARNING** and/or the manufacturers' requirements.

9.      hhgregg charges its customers between approximately $60 and $80 to install each Dryer.  hhgregg failed to properly install the Dryers because it did not use the vents mandated by the manufacturer.

10.     Indeed, despite the fact that hhgregg has sold and installed Dryers for many years, unbeknownst to Plaintiffs and the Class, the installations of the Dryers for the Class did not meet the requirements set by the manufacturer.  To date, based on information and belief hhgregg continues to

improperly install Dryers to unknowing customers, violating the manufacturers' warranties and creating hazardous conditions that can lead to death or fire.

11.    hhgregg states that its "Deluxe Delivery" specifically includes the following: "Provide and install vent hose and clamps for dryer." *See* http://www.hhgregg.com/deliveryCharges.asp.  Plaintiffs and Class members reasonably believed that hhgregg would provide the *proper* vent hose, and that its "deluxe" and "professional" installation of the Dryers would be done properly and in a workmanlike manner. However, hhgregg breached the installation contracts of Plaintiffs and all members of the Class by failing to properly install the Dryers in direct violation of the **WARNING** in the manual for the Dryers and/or affixed to the Dryers themselves.

12.    As part of the installation of Dryers, hhgregg is obligated to safely install the Dryers in accordance with manufacturers' instructions.

13.    Contrary to its contractual obligations, as well as manufacturer standards, the Dryers purchased by Plaintiffs and the Class have been and continue to be installed improperly, without the mandated "heavy metal vent."  hhgregg installs the Dryers with either metal foil or plastic vents specifically prohibited by the Dryers' owner's manuals and/or on the **WARNING** affixed to the back of the Dryers.  Defendants' failure to install the Dryers safely and according to the manufacturers' instructions breached the installation contracts between hhgregg and its customers, violated of the manufacturers' warranties on the Dryers, created significant danger to the customers and their families, and caused substantial monetary damages.

14.    hhgregg's unlawful and continuous hazardous course of conduct creates a significant risk of immediate and irreparable harm to its customers, thereby justifying the issuance of an ongoing preliminary injunction, and ultimately a permanent injunction enjoining hhgregg and its agents from installing the Dryers with anything other than heavy metal vents.

15.     As a direct consequence of hhgregg's failure to properly and safely install the Dryers, Plaintiffs and the Class either have or will incur significant damages to ensure that their Dryers are installed in a manner that is safe and meets the requirements mandated by the manufacturer.

## THE PARTIES

16.     Plaintiffs Ryan and Amanda Mack were and are, at all times relevant, residents of the State of Indiana.  Plaintiffs purchased a Dryer from hhgregg on or about March 9, 2007, for $565 and contracted with hhgregg for "deluxe," "professional" installation by hhgregg for an additional sum of $59.99.  *See* receipt, attached as Exhibit A.

17.     hhgregg has its principal place of business at Indianapolis, Indiana.  hhgregg is engaged in the business of retail sales and installation of appliances and other merchandise. hhgregg, Inc. was formed in Delaware on April 12, 2007.  The shareholders of Gregg Appliances, Inc. contributed all their shares to hhgregg, Inc. in exchange for common stock of hhgregg, Inc. Gregg Appliances, Inc. is a wholly owned subsidiary of hhgregg, Inc. and is organized under the laws of Indiana.

## JURISDICTION AND VENUE

18.     The Court has subject matter jurisdiction over this action pursuant to 28 USC §1332(d)(2) because this matter is a class action with an amount in controversy that exceeds $5,000,000, there are thousands of Class members, and members of the Class of plaintiffs nationwide are citizens of States different from Gregg Appliances, Inc. and hhgregg, Inc.

19.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b) and (c) because a substantial part of the events or omissions giving rise to the claims occurred in this District and because hhgregg is subject to personal jurisdiction in this District.

20.     The members of the putative Class have suffered aggregate damages exceeding $5,000,000, exclusive of interest and costs.

- 4 -

## SUBSTANTIVE FACTUAL ALLEGATIONS

### *Plaintiffs' Personal Experience*

21.     Plaintiffs purchased a Dryer from an hhgregg retail store located at 4161 E. 96th Street, Indianapolis, Indiana, on March 9, 2007.  In addition to the Dryer, Plaintiff paid hhgregg $59.99 for a so-called "deluxe" and "professional" installation of the Dryer in their home.

22.     In April, 2008, Plaintiffs discovered for the first time the **WARNING**, which was not normally visible due to its location.  The **WARNING** clearly stated:



23.     After discovering the **WARNING** label for the first time, Plaintiffs inspected the Dryer vent utilized by hhgregg when it installed the Dryer and discovered that it was a metal foil vent – one of the two types of vents specifically prohibited on the **WARNING** label.  Plaintiffs' Dryer vent looked like the following picture:

- 5 -



24.    Having learned of hhgregg's creation of a hazardous condition, Plaintiff reviewed the Dryers' manual and confirmed that it too contained the **WARNING.**  *See* User Manual at pg. 12, attached as **Exhibit B**.  It mandated the use only of a "heavy metal vent", such as shown in the following pictures:

Heavy metal – rigid:



Heavy metal – flexible semi-rigid:



25. Plaintiffs' Dryer manual even stated that it would not pay for any damage to the Dryer, pursuant to the warranty, that was a result of an improper installation. *See* User Manual at pg. 26, attached as **Exhibit C**. Thus improper installation risks voiding Plaintiffs' and Class Members' warranties.

### *hhgregg's Misconduct*

26. hhgregg is a leading regional home appliance retailer operating in several States. hhgregg has been in business since 1955, selling appliances, electronics, and other items.

27. Nevertheless, hhgregg failed to install Plaintiffs' Dryer and the Dryers of other members of the Class according to the manufacturers' specifications and contrary to the express **WARNING**.

28. Despite its knowledge of its uniform breach of its installation obligations and its uniform creation of hazardous conditions, hhgregg refused to address the substandard installations and has left customers with Dryers that could potentially catch fire and cause harm or death to its customers and their families.

- 7 -

29.     Each manufacturer of Dryers maintains uniform standards requiring a heavy metal vent to be used during installation.  Below is a sampling of Dryers, along with the manufacturer specifications by which they should be installed, with regard to the type of vent required:

| Manufacturer | Model Number | Venting requirements warning language |
|---|---|---|
| Amana | NED5500TQ | Use a heavy metal vent |
| GE | DPGT750 | Use only rigid metal 4" diameter ductwork inside the dryer cabinet. Use of plastic or other combustible ductwork can cause a fire. |
| | DBVH520 DCVH515 DCVH640 DHDVH552 DHDVH66 | Use only rigid metal or flexible metal 4" diameter inside the dryer cabinet or for exhausting to the outside. Do not use plastic or other combustible ductwork. |
| | DPSR610 DPSE810 | Use only rigid metal 4" diameter ductwork inside the dryer cabinet. Use only rigid metal or flexible metal 4" diameter ductwork for exhaust to the outside. Do not use plastic or other combustible ductwork. |
| Frigidaire | AEQ6700FE AGQ6700ES FEQ1442E FGQ332E | Use only 4 inch diameter rigid or flexible metal duct and approved vent hood which has a swing-out damper(s) that open when the dryer is in operation. Do not install a clothes dryer with flexible plastic venting materials. |
| Whirlpool | LDR3822P LEW0050P WED6400S WED8300S WED9600T WGD5700S WGD9400S | Use a heavy metal vent. Do not use a plastic vent. Do not use a metal foil vent. Failure to follow these instructions can result in death or fire. |
| Maytag | MED9700SQ MGD5700TQ MED2600TW MGD6600TQ | Use a heavy metal vent. Do not use a plastic vent. Do not use a metal foil vent. Failure to follow these instructions can result in death or fire. |

30.     In addition to the above, many governmental, consumer, and trade groups have cautioned against the use of foil or plastic flexible vents:

        (a)     In 2003, the Consumer Product Safety Commission warned that to prevent a fire, owners should "Replace plastic or foil, accordion-type ducting material with rigid or corrugated semi-rigid metal duct.  Most manufacturers specify the use of a rigid or corrugated semi-rigid metal

duct, which provides maximum airflow.  The flexible plastic or foil type duct can more easily trap lint and is more susceptible to kinks or crushing, which can greatly reduce the airflow."

(b)     The Federal Emergency Management Agency ("FEMA") noted similar concerns in 2007: "All manufacturers now state in their manuals not to use plastic flexible dryer ducts between the vent and the clothes dryer. However, many homes, as well as some new construction homes, continue to use plastic flexible ducts.  The plastic itself can provide additional fuel for a fire.  Even flexible foil vents are not the best choice for venting clothes dryers.  Flexible vents can sag, allowing lint to build up and catch on fire if it comes in contact with a sufficient amount of heat.  If a fire starts beneath the dryer when the motor overheats, then the drafts from the dryer can pull that fire up into the duct and venting allowing a house fire to develop."[1]

(c)     Consumer Reports has found that "When it comes to dryer fires, flexible dryer ducts made of foil or plastic are the most problematic because they can sag and let lint build up at low points.  Ridges can also trap lint.  Metal ducts, either flexible or rigid, are far safer because they don't sag, so lint is less likely to accumulate.  What's more, if a fire does start, a metal duct is more likely to contain it."[2]

(d)     The Association of Home Appliance Manufacturers ("AHAM"), the trade association of the home appliance manufacturing industry, submitted comments to the 1999 edition of the National Fuel Gas Code (ANSI Z223.1/NFPA 54) to specify that exhaust and transition vents shall not be constructed of coiled-wire foil or plastic material and that vents be installed in

---

[1]     FEMA (www.usfa.dhs.gov/statistics/reports) Tropical Fire Research Series, vol. 1, issue 1 (Jan. 2007).

[2]     *See* http://www.nuflodryerventcleaning.com/1952920.html.

accordance with the clothes dryer manufacturer's installation instructions. AHAM recommends that clothes dryer vents be constructed of rigid sheet metal or corrugated semi-rigid sheet metal material.[3]

### *The Dangers of Improper Installation Are Real*

31.  According to the U.S. Fire Administration (Division of U.S. Department of Homeland Security), clothes Dryers were involved in an estimated 15,600 U.S. structure fires, fifteen deaths, 400 injuries and $99 million in direct property damage, annually, between 2002–2004 alone.

32.  The leading cause of clothes Dryer fires is due to improper installation of vents and excessive build up of lint within the Dryer and ventilation tubes. The correct installation and use of the heavy metal Dryer vent greatly reduces the risk of lint build-up and exhaust pipe restriction. Below is just a sampling of recent home fires linked to clothes Dryers:

**Family Escapes After Dryer Fire in CK Home - by Josh Farley - Kitsap Sun (4/11/2008)**
KITSAP, WA - A fire late Thursday at a Conifer Drive home displaced a family of five, according to Central Kitsap Fire and Rescue. The homeowner awoke to find the two-story home thick with smoke — but was unable to get downstairs to wake two of her children, reports said. She lowered one of her children from the second story to safety, then jumped from the house herself. She was then able to pound on the children's windows downstairs and they both escaped safely, crews said. She then called 911 from a neighbor's home. Firefighters doused the flames and kept damage to the home's laundry area, but heavy smoke damage was reported elsewhere through the house. The family dog, which was in the basement of the house, was rescued by crews. The Kitsap County Fire Marshal's Office said the fire started in the dryer.

**Cause Found in Early Morning House Fire - WSFA NBC Channel 12 News (4/9/2008)**
MONTGOMERY, AL – The Montgomery Fire Department tells WSFA 12 News they are treating an early morning fire on as an accident. Officials say the fire was most likely stared by a clothes dryer. The fire was well involved when fire fighters arrived on scene, and it took 20 minutes to get the blaze under control. There were no significant injuries, but one firefighter was treated for first and second degree burns. Unfortunately, the house is not livable at this time because it was so heavily damaged.

**Family Loses Home to Fire - By Chris Brennaman - WTOK NewsCenter 11 ABC (4/9/2008)**
DEKALB, MS - A trip to the grocery store Monday evening turned out to be anything but ordinary for the Carpenter family of DeKalb. Kendra and Lyndon arrived home just as two of their three children were running out of the family's burning house. Nothing in the home was spared from the fire, which was believed to have started from the dryer. "We're all heartbroken, but the most important thing is our kids made it out safe and we're all here, alive and well," Carpenter said. "That's really all that matters."

---

[3]     *See* http://www.aham.org/consumer/ht/a/GetDocumentAction/id/859.

**Dryer Blamed for $375,000 House Fire - Tri-Valley Herald (4/7/2008)**

PLEASANTON, CA - A fire that apparently started in a clothes dryer caused $375,000 damage to a two-car garage and attached single family house this morning, fire officials said. Fire Battalion Chief Joe Testa said the fire, which was reported at 5:53 a.m., destroyed the garage. There was also some fire damage to the house, which is attached to the garage. The dryer was in operation when the fire started, he said. One firefighter sustained a minor injury fighting the fire. "The homeowner did the right thing, he got his family out safely, then called 9-1-1-," Testa said.

**Apartment Fire Blamed on Clogged Dryer Vent - By Anita Debro - The Birmingham News (4/3/2008)**

BIRMINGHAM, AL – A clogged dryer vent sparked the fire Tuesday night that destroyed 23 apartments at the Enclave at Mountain Brook, Irondale fire officials said today. Fire Chief Randy Davis said lint built up inside the dryer vent caught fire as the dryer was running inside a unit of the apartment complex. The fire ripped through the building as Irondale, Birmingham and Mountain Brook firefighters fought to contain the blaze. There were 23 families displaced.

**Woman at Willingboro House Fire Later Dies - By Mari A. Schaefer - The Philadelphia Inquirer (3/30/2008)**

WILLINGBORO, PA - A 69-year-old woman died after she was pulled from a burning house in Willingboro yesterday morning. At 8:52 a.m., 911 dispatchers received a call about a clothes dryer fire in the 100 block of Millbrook Drive. The blaze had spread by the time firefighters arrived. The unidentified woman was taken to Our Lady of Lourdes Medical Center in Camden, where she was pronounced dead.

**Clothes Dryer Blamed for Fire that Left 10 Homeless - By Katrina Webber - KSLA CBS News Channel 12 (3/25/2008)**

SHREVEPORT, LA - Shreveport fire investigators believe a clothes dryer cause a fire that destroyed a home early Tuesday morning. Ten people were inside when the fire broke out around 1:00 a. m. All of them managed to get out of the home, in the 3300 block of Frederick Street, safely, although firefighters say they had to treat one woman who became upset. Firefighters say flames and smoke were coming out of the front door by the time they arrived. The house, though, could not be saved. The fire caused heavy damage throughout it.

**Clothes Dryer Caused Deadly Chesapeake House Fire - The Daily Press (2/29/2008)**

CHESAPEAKE, VA - Chesapeake fire officials say a clothes dryer caused a fire that killed three people in a house fire Thursday. Authorities have not released the names of the victims, who were found in a room above the garage at the home. Captain Steve Johnson said all three are believed to have been between the ages of 18 and 25. He said one of the victims apparently went upstairs to help the other two but ended up trapped with them.

**Fire Kills Mother, Son Who Tried to Save Her - By Edward Colimore and Peter Mucha - The Philadelphia Inquirer (2/28/2008)**

CHERRY HILL, NJ - Fourteen-year-old Bobby Ferrell had already escaped his burning home in Jobstown, Burlington County, authorities said. But standing outside with his brother and sister early yesterday, he realized that their mother was inside, apparently trapped on the second floor. The athletic ninth grader raced back into the smoke and flames to save her. Neither he nor his mother, Michelle Ferrell, escaped the four-alarm fire, which gutted their house in rural Springfield Township near Fort Dix. Ferrell, 53, and her children were home shortly after 4:30 a.m. when the fire broke out in a clothes dryer.

**Lint-filled Dryer Blamed for Fire - Erie Times News (2/27/2008)**

ERIE, PA - Erie firefighters spent part of the morning Tuesday dousing a blaze believed to have started in a clothes dryer. Firefighters said they responded to the call at 1:56 a.m. Tuesday and had the fire under control by 2:30 a.m. The fire started in a gas dryer in the basement, fire inspectors said. They said the dryer's lint trap was full and the lint caught fire. The fire was contained to the basement, but there was some smoke damage to the house's upstairs, fire inspectors said.

**Family Displaced Following Fire - Boca News (2/26/2008)**

BOCA RATON, FL - Boca Raton firefighters responded to a structure fire at 6503 N. Military Trail. Firefighters

arrived to find smoke coming from the structure.  Firefighters made entry and found the fire in the laundry closet in the kitchen area and quickly extinguished the fire.  Fire officials stated that the fire appears to have originated in the clothes dryer.  Damage is estimated at approximately $50,000.  Eight families were evacuated and the occupants of the affected apartment were displaced.

**Aide Dies After Helping Elderly Evacuate Fire - By Kate Augusto - The Boston Globe (2/21/2008)**
BOSTON, MA - A 51-year-old nursing assistant died today in Lowell after she helped evacuate elderly residents from a nursing home during a small fire in a dryer.  Rawlene Lizotte collapsed outside the Fairhaven Healthcare Center after helping to evacuate six residents, said Deputy Chief Patrick McCabe of the Lowell Fire Department.  Rescuers tried to resuscitate Lizotte and rushed her to Lowell General Hospital, where she was pronounced dead.  Firefighters responded to the fire, which started in a dryer in the laundry room.

**Dryer Fire Causes Scare - WZZM ABC News Channel 13 (2/12/2008)**
CROCKERY TOWNSHIP, MI - A woman in Crockery Township got quite a scare this morning when her  clothes dryer on fire and spread to the rest of the house.  The fire department was called to the home around 9:00am.  The woman reported a few moments later that she heard an explosion.  The fire department says these types of fires can be prevented by cleaning out the lint trap and dryer vent.

**House Fire Traced to Bad Dryer Venting - By Barney Lerten - KTVZ NBC News Channel 21 (2/12/2008)**
BEND, OR – Inadequate dryer venting sparked a laundry-room fire that caused extensive heat and smoke damage throughout a La Pine-area home, officials said.  The blaze spread throughout the laundry room area and began to reach into the attic space above the laundry room of the two-bedroom home, built in 1975 and valued at $285,000.

**Mother and Son Die in Fire at Home - By Paul Nelson - Albany Times Union (1/21/2008)**
STUYVESANT , NY - A woman and her baseball-loving 11-year-old son died Sunday as they tried to extinguish a fire that started in a clothes dryer, authorities said.  The fire did little damage to Malea Gravlin's home, but authorities believe the smoke was enough to kill the two.  Stuyvesant Fire Chief Steve Montie said the fire started sometime between 3:30 and 4 p.m. in Malea Gravlin's one-story, wood-frame home.  Officials say it appears dryer in the house caught fire and the two were overcome by smoke as they tried to put out the flames.

**Tot Saves Family from Fire - By Miles Godfrey - The Argus (1/18/2008)**
BRIGHTON, UK - A six year-old boy saved his family from serious injury after a blaze at their home.  The lad woke up in the middle of the night just as a dryer burst into flames.  When his parents were woken by the child they smelt the smoke and quickly evacuated the two storey property.  Just as they got out just after midnight today as the dryer was engulfed in flames.  Two crews from the town's Blue Watch were needed to put it out.

33.     Despite hhgregg's knowledge of the significant fire hazard associated with the improper installation of clothes Dryers, hhgregg has not taken steps to ensure that its customers receive safe installations in accordance with all manufacturer instructions.  Instead, hhgregg has chosen to install Dryers for the Class using improper materials, therefore saving hhgregg a substantial amount of time and money but, by doing so, breaching the contract they have entered into with Class members, violating its customers' warranties, and putting them at risk of death or injury.

## CLASS ACTION ALLEGATIONS

34.     Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b) on behalf of themselves and all others similarly situated as members of the following class:

> All persons who purchased a Dryer from hhgregg, who entered into a contract with hhgregg to install the Dryer, and whose Dryer was installed pursuant to that agreement with a vent that was not in accordance with the manufacturer's requirements.

35.     Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint.  Specifically excluded from the proposed Class are the Defendants, their officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint venturers, or entities controlled by Defendants, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendants and/or their officers and/or directors, or any of them; the Judge assigned to this action, and any member of the Judge's immediate family.

36.     ***Numerosity***.  The members of the Class are so numerous that their individual joinder is impracticable.  Plaintiffs are informed and believe, and on that basis allege, that the proposed Class contains many thousands of members.  The precise number of Class members is unknown to Plaintiffs.  The true number of Class members are known by Defendants, however, and thus, may be notified of the pendency of this action by first class mail, electronic mail, and by published notice.

37.     ***Existence and Predominance of Common Questions of Law and Fact***.  Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members.  These common legal and factual questions include, but are not limited to, the following:

- 13 -

(a)     Whether the installation of the Dryers by the Defendants violates the manufacturers' requirements and/or the **WARNING**;

(b)     Whether the Defendants breached contracts with Plaintiffs and other members of the Class with respect to the installation of the Dryers;

(c)     Whether the Defendants have been unjustly enriched at the expense of Plaintiffs and the Class;

(d)     Whether the Defendants are liable to Plaintiffs and the Class for money had and received;

(e)     Whether the Defendants should be enjoined from engaging in the methods, acts or practices alleged herein; and

(f)     Whether Plaintiffs and the Class are entitled to damages, restitution, equitable relief and other relief, including, but not limited to, specific performance of the installation contracts, and the amount and nature of such relief.

38.     *Typicality*.  Plaintiffs' claims are typical of the claims of the members of the Class in that Defendants breached the contracts regarding installation and was unjustly enriched as a result of Defendants' installation of the Dryers purchased by Plaintiffs and each member of the Class.

39.     *Adequacy of Representation*.  Plaintiffs will fairly and adequately protect the interests of the members of the Class.  Plaintiffs have retained counsel highly experienced in complex consumer class action litigation, and Plaintiffs intend to prosecute this action vigorously.  Plaintiffs have no adverse or antagonistic interests to those of the Class.

40.     *Superiority*.  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against the Defendants.  It would thus be virtually

impossible for the Class, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

41. In the alternative, the Class may be also certified because:

(a) the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for the Defendants;

(b) the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c) Defendants have acted or refused to act on grounds generally applicable to the Class thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

42. The claims asserted herein are applicable to all customers throughout the United States who contracted with hhgregg for proper installation of a Dryer and whose Dryer was installed by hhgregg with a vent that was not in accordance with the manufacturer's requirements.

43. Adequate notice can be given to Class members directly using information maintained in Defendants' records or through notice by publication.

44.     Damages may be calculated, in part, from the sales, service and contract information maintained in Defendants' records and the records of members of the Class, so that the cost of administering a recovery for the Class can be minimized.  However, the precise amount of damages available to Plaintiffs and the other members of the Class is not a barrier to class certification.

## COUNT I

## Breach of Contract - Damages

45.     Plaintiffs hereby incorporate by reference each of the preceding allegations as though fully set forth herein.

46.     hhgregg and Plaintiffs entered into a contract whereby hhgregg agreed to provide installation services, within the manufacturer's specifications, to its customers purchasing Dryers, including the Plaintiffs.  In return, Plaintiffs and the Class agreed to pay hhgregg a flat rate for the installation services.

47.     Upon information and belief, the contracts entered into by hhgregg and Plaintiffs are identical or substantially similar to agreements entered into between hhgregg and all other Class members.

48.     As described above, hhgregg breached its contract with Plaintiffs and the Class by not installing the Dryers according to the manufacturers' specifications.

49.     As a direct and proximate result of hhgregg's breach, Plaintiffs and the Class have been damaged.

50.     All conditions precedent to this claim have been waived or satisfied.

51.     Plaintiffs seek to obtain a pecuniary benefit for the Class in the form of all damages from hhgregg.  Plaintiffs' counsel are entitled to recover their reasonable attorneys' fees and expenses as a result of the conferment of a pecuniary benefit on behalf of the Class, and will seek an award of such fees and expenses at the appropriate time.

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for relief and judgment against hhgregg as follows:

A.    For an order certifying the Class under the appropriate provisions of Rule 23, as well as any appropriate subclasses, and appointing Plaintiffs and their legal counsel to represent the Class;

B.    Awarding damages sustained by Plaintiffs and the Class as a result of hhgregg's unlawful acts and conduct;

C.    For pre- and post-judgment interest to the Class, as allowed by law;

D.    For reasonable attorneys' fees and costs to counsel for the Class if and when pecuniary benefits are obtained on behalf of the Class; and

E.    Granting such other and further relief as is just and proper.

## COUNT II

### Breach of Contract - Specific Performance

52.    Plaintiffs hereby incorporate by reference the allegations in the preceding paragraphs as though fully set forth herein.

53.    This cause of action is pled in the alternative of Count I.

54.    hhgregg and Plaintiffs entered into a valid, binding, and enforceable contract whereby hhgregg agreed to provide installation services, within the manufacturer's specifications, to customers purchasing Dryers, including the Plaintiffs.  In return, Plaintiffs agreed to pay hhgregg a flat rate for the installation services.

55.    Upon information and belief, the contracts entered into by hhgregg and Plaintiffs are identical or substantially similar to agreements entered into between hhgregg and all other Class members.

56.    Plaintiffs and the Class have complied with the contract by paying hhgregg a flat rate for the installation services.

- 17 -

57.     As described above, hhgregg has failed or refused to perform its part of the contract with Plaintiffs and the Class by not installing the Dryers according to the manufacturers' specifications.

58.     Accordingly, Plaintiffs and the Class seek the remedy of specific performance.

59.     All conditions precedent to this claim have been waived or satisfied.

60.     Plaintiffs seek to obtain a non-pecuniary benefit for the Class in the form of specific performance under the installation contracts by hhgregg. Plaintiffs' counsel are entitled to recover their reasonable attorneys' fees and expenses as a result of the conferment of a non-pecuniary benefit on behalf of the Class, and will seek an award of such fees and expenses at the appropriate time.

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for relief and judgment against hhgregg as follows:

A.      For an order certifying the Class under the appropriate provisions of Rule 23, as well as any appropriate subclasses, and appointing Plaintiffs and their legal counsel to represent the Class;

B.      Awarding Plaintiffs and the Class specific performance of the installation contracts, requiring hhgregg to re-install the Dryers according to the manufacturers' specifications;

C.      For reasonable attorneys' fees and costs to counsel for the Class if and when non-pecuniary benefits are obtained on behalf of the Class; and

D.      Granting such other and further relief as is just and proper.

## COUNT III

### Unjust Enrichment

61.     Plaintiffs hereby incorporate by reference the allegations in the preceding paragraphs as though fully set forth herein.

62.     This cause of action is pled in the alternative of all contract-based causes of action.

63.     hhgregg had knowledge of the improper installation of the Dryers.

64.     During the class period, Plaintiffs and Class members conferred upon hhgregg's, without knowledge of the substandard installation, payment for the installation services, benefits that were non-gratuitous.

65.     hhgregg accepted or retained the non-gratuitous benefits conferred by Plaintiffs and the Class members despite hhgregg's knowledge of the substandard installations.

66.     Retaining the non-gratuitous benefits conferred upon hhgregg by Plaintiffs and the Class members under these circumstances made hhgregg's retention of the non-gratuitous benefits unjust and inequitable.

67.     Because hhgregg's retention of the non-gratuitous benefits conferred by Plaintiffs and the Class members is unjust and inequitable, hhgregg must pay restitution in the manner established by the Court, in addition to any other equitable remedy the Court may choose to impose.

68.     Accordingly, Plaintiffs and members of the Class seek full restitution of the hhgregg's enrichment, benefits and ill-gotten gains acquired as a result of the unlawful and/or wrongful conduct alleged herein.

69.     Plaintiffs and the Class have no adequate remedy at law.

70.     Plaintiffs seek to obtain a pecuniary benefit for the Class in the form of all reimbursement, restitution and disgorgement from hhgregg.  Plaintiffs' counsel are entitled to recover their reasonable attorneys' fees and expenses as a result of the conferment of a pecuniary benefit on behalf of the Class, and will seek an award of such fees and expenses at the appropriate time.

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for relief and judgment against hhgregg as follows:

A.     For an order certifying the Class under the appropriate provisions of Rule 23, as well as any appropriate subclasses, and appointing Plaintiffs and their legal counsel to represent the Class;

B.      Awarding reimbursement, restitution and disgorgement from hhgregg of the benefits conferred by Plaintiffs and the Class;

C.      For pre- and post-judgment interest to the Class, as allowed by law;

D.      For reasonable attorneys' fees and costs to counsel for the Class if and when pecuniary benefits are obtained on behalf of the Class; and

E.      Granting such other and further relief as is just and proper.

## COUNT IV

## Money Had and Received

71.     Plaintiffs hereby incorporate by reference the allegations in the preceding paragraphs as though fully set forth herein.

72.     This cause of action is pled in the alternative of all contract-based causes of action.

73.     As a result of the conduct alleged herein, hhgregg has improperly received monies from Plaintiffs and the Class that it was not legally entitled to receive.

74.     Plaintiffs and members of the Class have a claim for improperly paid monies to hhgregg resulting from hhgregg's improper installation of the Dryers.

75.     Equity and good conscience require that hhgregg pay over such additional monies, described above, to Plaintiffs and the Class.

76.     As a direct and proximate result of hhgregg's misconduct, Plaintiffs and members of the Class have suffered injury and are entitled to reimbursement, restitution and disgorgement in the amount necessary to restore them to the position they would have been in if hhgregg had not improperly installed the Dryers.

77.     Plaintiffs seek to obtain a pecuniary benefit for the Class in the form of reimbursement, restitution and disgorgement from hhgregg.  Plaintiffs' counsel are entitled to recover their reasonable attorneys' fees and expenses as a result of the conferment of a pecuniary

benefit on behalf of the Class, and will seek an award of such fees and expenses at the appropriate time.

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for relief and judgment against hhgregg as follows:

A.      For an order certifying the Class under the appropriate provisions of Rule 23, as well as any appropriate subclasses, and appointing Plaintiffs and their legal counsel to represent the Class;

B.      Awarding reimbursement, restitution and disgorgement from hhgregg of the benefits conferred by Plaintiffs and the Class;

C.      For pre- and post-judgment interest to the Class, as allowed by law;

D.      For reasonable attorneys' fees and costs to counsel for the Class if and when pecuniary benefits are obtained on behalf of the Class; and

E.      Granting such other and further relief as is just and proper.

## COUNT V

### Injunctive Relief

78.     Plaintiffs hereby incorporate by reference the allegations in the preceding paragraphs as though fully set forth herein.

79.     Plaintiffs have no adequate remedy at law for future unlawful conduct by hhgregg in connection with its installation of Dryers to hhgregg's customers.

80.     Contrary to the dictates of the **WARNING** and the manufacturers' installation requirements, hhgregg continues to install the wrong Dryer vents when installing Dryers for certain of its customers.

81.     The continuing nature of hhgregg's acts would necessitate a separate action by Plaintiffs and each Class member for damages for each act and would subject Plaintiffs, each Class

82.     For these reasons, the failure of hhgregg to uphold its contractual obligations to install Dryer vents which are safe and meet manufacturer requirements causes irreparable injury to Plaintiffs and the Class.

83.     Plaintiffs and the Class have a substantial likelihood of success on the merits of their claims (*i.e.*, Counts I through IV, *infra*), since hhgregg's liability is clear and self-evident.

84.     An injunction prohibiting hhgregg from continuing to engage in practices that are likely to cause severe injury or death and violate the manufacturers' requirements for Dryer vents will serve the public interest since it will prevent injury or death, will ensure that manufacturer warranties are not violated, and will prevent hhgregg from causing damage to Plaintiffs and the Class, as well as their families.

85.     Plaintiffs and the Class are entitled to an injunction prohibiting hhgregg from continuing to engage in practices alleged herein.

WHEREFORE, Plaintiffs demand the following relief:

A.     An order certifying the Class under the appropriate provisions of Rule 23, as well as any appropriate subclasses, and appointing Plaintiffs and their legal counsel to represent the Class;

B.     For the named Plaintiffs and the Class, injunctive relief against hhgregg as this Court deems necessary and proper including entering an injunction against hhgregg which requires hhgregg to install only Dryer vents which adhere to the **<u>WARNING</u>** and/or to the manufacturers' requirements;

C.     For reasonable attorneys' fees and costs to counsel for the Class if and when non-pecuniary benefits are obtained on behalf of the Class; and

D.     Granting such other and further relief in equity as is just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs, on behalf of themselves and all others similarly situated, hereby demand a jury trial on all issues so triable.

DATED:  May 30, 2008            MADDOX HARGETT & CARUSO

/s/ Thomas A. Hargett
THOMAS A. HARGETT
THOMAS K. CALDWELL
10100 Lantern Road, Suite 150
Fishers, Indiana 46038
Telephone: 317/598-2040
317/598-2050 (fax)

DAVID P. MEYER & ASSOCIATES CO., LPA
DAVID P. MEYER
MATTHEW R. WILSON
1320 Dublin Road, Suite 100
Columbus, Ohio 43215
Telephone: 614/224-6000
614/224-6066 (fax)

COUGHLIN STOIA GELLER RUDMAN
  & ROBBINS LLP
PAUL J. GELLER
STUART A. DAVIDSON
120 East Palmetto Park Road, Suite 500
Boca Raton, Florida 33432
Telephone: 561/750-3000
561/750-3364 (fax)

COUGHLIN STOIA GELLER RUDMAN
  & ROBBINS LLP
ROBERT M. ROTHMAN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

Attorneys for Plaintiffs and the Class